## NARCISSE PENSONEAU

*v.*

## JOHN W. PULLIAM *et al.*

1. EVIDENCE—*answer of a co-defendant in chancery—when may be used against another.* An exception to the general rule that the answer of one co-defendant in chancery cannot be evidence against another, prevails in cases where the parties have a joint interest, either as partners, or otherwise, in the transaction to which the answer may relate.

2. MORTGAGE—*securities for money—or to indemnify—treated as mortgages—also promise to extend time of redemption.* Courts of equity strongly incline to treat all securities for money, or to indemnify, as mortgages; and when a purchaser of lands, at or before a judicial sale, promises to extend the redemption beyond the time allowed by law, the transaction will be treated as a mortgage of the lands sold, the real right of the creditor extending no further than full satisfaction of his debt. All such cases, however, are controlled by the circumstances attending them.

3. SAME—*agreement to extend the redemption—no time fixed—what deemed a reasonable time.* And where the time for redemption was not fixed upon by the parties, under an agreement extending it beyond the time allowed by law, the circumstances attending the transaction—as, the friendly relations between the parties, the constant enhancement of the value of the security by improvements thereon by the debtor, and the fact that the creditor was not pressing for payment—will be considered as justifying the debtor in not offering to perfect the redemption for nearly two years after the deed made.

APPEAL from the Circuit Court of St. Clair county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

The facts in this case are fully stated in the opinion.

Mr. W. H. UNDERWOOD, for the appellant.

Mr. S. M. KASE, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The complainant in these proceedings, and the appellant here, having become indebted to sundry persons by note and mortgage, appellees, to befriend him, as it would appear, paid and assumed his liabilities so secured by mortgage, taking, in one case, an assignment of the mortgage, and, in the other, procuring a new mortgage from the complainant directly to themselves. The estate conveyed was incumbered by judgments, taxes, and by a sale for taxes of one portion of it, all of which appellees adjusted or paid off, and appellant relieved therefrom. The mortgage to appellees, which they first obtained to themselves, included in it a portion of the land covered by the mortgage assigned by Mrs. Adelaide Snyder. These original transactions were of old date, reaching back as far as 1853. The more recent, dated from about April, 1859.

Complainant not paying the money secured by these mortgages, appellees, at the August term, 1859, of the St. Clair Circuit Court, filed their bill to foreclose both mortgages, as is alleged, by mutual consent, the defendant agreeing not to interpose any defense or make any objection to a proceeding, apparently irregular, that of combining two mortgages to different persons in one bill, and obtaining a decree for the sale of all the lands described in them, although one of them, that to Mrs. Snyder, had been paid and satisfied by complainant.

The usual decree passed, a sale was had, and the lands bought in by appellees for the amount due by both mortgages, and a deed executed to them after the time for redemption expired, in June, 1861.

At the March term, 1863, complainant exhibited his bill in chancery, alleging, among other things, that this decree was had, by mutual consent, under an agreement that if, at any time, he should pay appellees the money advanced by them for him, they would re-convey the premises to him. He also alleged, that at the time the decree passed, he had paid the Snyder mortgage, and he avowed a readiness and willingness to pay the balance justly due appellees, but that they claimed

more than was their due, and refused to re-convey.    He prayed that Scheel and Cabanne should be required to answer under oath, but as to Pulliam, the other ·defendant, his oath was waived; he prayed that an account should be taken of the amount due each of the defendants, and that he might be allowed to pay such amount, according to their mutual under-standing, and, on such payment, defendants should re-convey, and for general relief.

Scheel, in his sworn answer, admits the principal allegations of the bill—that a mutual understanding existed between all the parties about the foreclosure, the purchase, the redemption and re-conveyance ; that complainant had himself paid the Snyder mortgage before the decree ; that he claims as due him, in virtue of the understanding mentioned, on the 25th of March, 1863, the sum of two thousand four hundred and fifty-five dollars and ninety cents, on payment of which he was ready to convey.

Cabanne, by his sworn answer, makes the same admissions, limiting the understanding to Scheel, himself and complain-ant; admits the payment by complainant of the Snyder mortgage ; claims there was due him on the 25th of March, 1863, twelve hundred and ninety-one dollars and ninety cents, on the payment of which, with interest, he was ready to re-convey.

Pulliam, in his answer, not under oath, admits the mortgages and their foreclosure, but denies any understanding as alleged and insisted upon ; states the amount he paid for complainant without giving dates ; and he avers that he advanced to com-plainant, from time to time, in different amounts, $542.25, with the understanding that the same should be treated as an equitable lien upon the real estate under the mortgage, which he, with Scheel and Cabanne, held against complainant, and that he holds other unsatisfied judgments and notes against complainant, and denies he ever gave Scheel any authority as agent in the premises.

A replication was put in to this answer, and testimony taken, among others, the testimony of Cabanne, for complainant; Scheel, it would appear, having died after answer filed. In his testimony, Cabanne repeats his answer, but, as before, confines the agreement to himself, Scheel and complainant. He does not know that Pulliam was present at the time, but was present on some occasions; the object was to benefit complainant, and at the same time make the payment of their advances sure; had great confidence in Scheel, and he was to attend to the matter. On his cross-examination, he stated that he and Scheel agreed to let complainant redeem, if by so doing they would materially benefit complainant without injuring themselves; complainant was promised by witness any reasonable extension he might want; does not know of such an arrangement with Pulliam; he says, we felt more secure by getting the foreclosure and a deed, and also had a larger amount of land for security than before; Pulliam made no objection to the foreclosure, and don't know that he assented to this understanding set up by complainant, or that he knew of it.

Proofs on other points not material to be noticed were made, among others, as to the value of the land. Witnesses stated they were well acquainted with it, and in 1854 it was worth thirty-six hundred dollars, and at the hearing, twenty-two thousand dollars, and that complainant, from time to time, had made valuable improvements, fencing and putting it in cultivation, and had erected a dwelling house on it, which, with the improvements, were worth at least thirty-five hundred dollars, and were chiefly put on since 1861, and the dwelling house was built in 1863-4, and that complainant and his family have lived on section two (2) since 1861.

The Court dismissed the bill as to Pulliam, and decreed that the devisee of Scheel and Cabanne, convey all their right to complainant, he paying into court the amounts respectively due them by their answers, with six per cent. interest from

the time of filing their answers, with interest at six per cent. from the date of the decree, the payments to be made on or before November 1st, 1867; and upon their refusal to make such deed on payment, for twenty days, then the master in chancery to make the deed, complainant to pay the costs.

To reverse this decree complainant brings the record here by appeal, assigning as error the dismissal of the bill as to Pulliam, and in not decreeing against all the defendants.

We have been favored with the perusal of the opinion delivered by the learned judge who heard this cause, and consider it a lucid statement of the facts, and, generally, of the law applicable to them. We are inclined to think, however, he did not give sufficient effect to the character of the transaction, and the position of the parties, and the advantages derived to Pulliam, from the consent given by complainant to the foreclosure of the two mortgages in one suit, whereby a larger amount of land was made subject to the debt of the complainant, in the foreclosure suit, one of which had actually been paid by the then defendant. By setting up this fact, and the joinder of the two mortgages in the same bill, it was in his power to delay a decree for some time, but on the understanding that he should have an opportunity to redeem, at any reasonable time after a decree and sale, no objection was made. That Pulliam was not a party to this understanding is not so clear. Scheel states most distinctly, that it existed among all the parties, and he, we infer from the testimony, was the active man in providing a mode of helping an embarrassed friend, for whom, it is apparent, they all had the kindliest feelings. The object of all the parties evidently was, and the only object, to get adequate security for their advances, and how to do so, was canvassed among them, and on some occasions Pulliam was present. It is very difficult to believe Pulliam did not know, that by the foreclosure proceedings, he and his co-complainants did not acquire the benefit of additional security by subjecting more land to the payment

of the decree than he and they had a lien upon. He availed himself of this advantage by being a joint purchaser with the others, of these lands, and they could hold them all under the master's deed. Surely, the defendant in the foreclosure suit, to allow this, must have had some such understanding, as Scheel and Cabanne admit, and, although it is contended the answer of neither can be used as evidence against Pulliam, even if that was so, that of Scheel discloses enough of the facts attending the transaction, to justify the conclusion that Pulliam could not be ignorant of the understanding. He was bound to know what he claimed in conjunction with Scheel and Cabanne by his bill, and he carried it out to a final decree, sale and purchase of the lands, and received the deed. But could not Scheel's answer be used against Pulliam? The reason why an answer of one defendant in chancery cannot be used against his co-defendant, is, because, as there is no issue between them, there can be no opportunity for cross-examination. But the rule does not apply where the parties have a joint interest, either as partners or *otherwise*, in the transaction. To test this, suppose Scheel had sworn, in his answer, that every dollar of the money had been paid by complainant, and that Pulliam had received his share, and Pulliam denied it in his answer, not on oath, could not such an answer be used against Pulliam, who, otherwise than as a partner, was yet jointly interested with Scheel in the subject? If, technically, it could not be so used, a state of case would be presented, which a court of equity could not disregard. Is there any difference, when a co-defendant, jointly interested with another, in a transaction for their mutual benefit, states, under oath, there was a certain understanding about the matter, which the party to be charged fully carried out on his part, and the facts show it was carried out by him, that this answer shall not go to the benefit of that party with whom the understanding was had, and against all the co-defendants, who do not deny the fact upon oath? We see no reason why

not. But, if the answer of Scheel cannot be read as evidence against Pulliam, under the strict rules of law, still, it shows, as does that of Cabanne, and his testimony also, that an arrangement was, in fact, made about the foreclosure, which was beneficial to Pulliam, in this, that it gave him more security for his debt, and he availed himself of it by becoming a purchaser of all the land. This being so, on general principles, he ought to be bound by it.

Again, it is quite evident from Pulliam's answer, that he considered this foreclosure and sale a mere security for present existing, and prospective advances to be made to complainant, else why speak of advances made by him to complainant of $542.25, "with the understanding that the same should be treated as an equitable lien upon the very estate mortgaged, sold and bought in."

There is a growing disposition on the part of all courts in this country, to treat all securities for money, or to indemnify, as mortgages; and when a promise is made by a purchaser, at or before a judicial sale, to extend the redemption beyond the time allowed by law, to treat the transaction as a mortgage on the land sold, the real right of the creditor extending no farther than full satisfaction of his debt. Circumstances, however, control all such cases.

It is insisted, even if there was such an understanding, it was to be perfected in a reasonable time, and this bill was not filed until near two years after the deed was made.

When it is considered, as the facts in the case clearly indicate, that the most friendly relations existed between all these parties; that they were anxious to save complainant from impending ruin; that they saw he was improving their security by adding thousands of dollars of value to it in the shape of permanent improvements, it is not to be supposed, they would be very pressing for payment, and as they were not pressing, complainant supposed, naturally, that his outlays of money on the property would be gratifying to his benefactors.

But it appears, from Pulliam's answer, though no point is made on it in the bill, or elsewhere, by complainant, that they had begun to hasten complainant, by commencing an action of ejectment against him, to dispossess him of his home, which, to one knowing the character of these defendants, was intended by them more as a gentle reminder to the complainant than an attempt to drive him to the wall. Then it was, or soon after, this bill was filed, and when all the circumstances preceding the transaction are taken into consideration, the fact that after the foreclosure and sale, and deed, complainant expended many thousand dollars upon the land, and that it had increased in value from thirty-six hundred to twenty-two thousand dollars, it cannot be doubted that complainant was fully impressed with the belief that the day of redemption for him had not elapsed, and at the first exhibition of impatience on the part of his friends, at the apparently long delay, he at once comes forward, and offers full payment of all he had ever owed them.

The expenditures of appellant on a portion of these lands, since the sale and deed, are very large, increasing their value very much, which he could not have made, if sane, save on the well grounded belief the agreement insisted on was made, and would be carried out in good faith. It does not appear equitable or just, that Pulliam should derive this great advantage under the circumstances disclosed. We think the demands of justice will be fully satisfied by carrying out the agreement, by which Pulliam will receive every dollar due to him, and which he advanced, not with a view to speculation on the embarrassments of a friend, but to relieve those embarrassments. The improvements made on the land, of such great value, could not have been unknown to Pulliam while they were being made, and if he did not intend complainant should redeem, common justice and fair dealing required that Pulliam should have notified him so that he might desist. He did not do this, but stood by and saw these

9—47TH ILL.

improvements being made, and ought not .to be permitted to profit by them, which he would do if the original understanding is not carried out.

The decree, therefore, so far as Pulliam is concerned, is reversed, and the cause remanded to the circuit court, with directions to refer the cause to the master in chancery, to ascertain and report the amounts severally due to each defendant, and if paid by complainant by a day to be named, with all interest and costs, then the defendants, the devisee of Scheel, Cabanne and Pulliam, shall make and deliver to the master for complainant, a deed of release, conveying all their interest in the lands described to complainant, and on their failure to do so, within ten days after the payment, then the master will convey the same to complainant.

*Decree reversed.*