Syllabus.

## UNION MUTUAL LIFE INSURANCE COMPANY

*v.*

## OWEN WHITE.

*Filed at Springfield March 29, 1883.*

1. MORTGAGE—*deed of trust as a mortgage.* A deed of trust is, in almost every respect, a mortgage. It, like a mortgage, is a mere security for money, or for the performance of certain undertakings by the grantor. It is a mere incident to the debt it secures, and upon which it depends and follows. When the debt is paid the mortgage is satisfied, but as long as the debt remains the mortgage exists, unless actually released.

2. SAME—*once a mortgage always a mortgage.* The rule of law is, that a conveyance once a mortgage is always a mortgage, until the debt is satisfied and extinguished or the equity of redemption foreclosed or released. In equity the mortgage still exists whatever form the parties may give the transaction, unless it is intended by both parties that it shall be released or extinguished.

3. SAME—*deed absolute in form—when a mortgage.* In equity a deed absolute in form is but a mortgage, if made as a security, and it will be treated and enforced as a mortgage, though the agreement for redemption therefrom rests only in parol, notwithstanding the Statute of Frauds.

4. SAME—*extending time of payment after foreclosure—effect as giving the character of a mortgage to the title under the foreclosure.* The holder of a debt secured by deed of trust assured the debtor, though not in writing, that he might have further time to pay the debt after foreclosure, and thereby induced him to let the property be sold, when, but for such assurance, the debtor might have redeemed before the sale. The creditor acquired the legal title at the foreclosure sale at less than one-fourth of the actual cash value of the premises. It was *held*, the creditor would still hold such title as a mortgage for the payment of the debt, the same as before the foreclosure, and the debtor might, in equity, redeem the property by paying the sum due, with costs, etc.

5. STATUTE OF FRAUDS—*not allowed to protect a fraud.* The Statute of Frauds was not intended to facilitate the perpetration of or to protect fraud, but to prevent it; and the courts will not permit the statute to be used as an engine of fraud.

6. CORPORATIONS—*of their private rules and regulations concerning the powers of their officers and agents—effect on the rights of strangers.* A foreign insurance company doing business in this State will be bound by the acts and contracts of its president and general agent here, in respect to persons in this State dealing with such corporation, when the acts of such

| | |
|---|---|
| 106 | 67 |
| 131 | 281 |
| 106 | 67 |
| 132 | 99 |
| 33a | 611 |
| 106 | 67 |
| 133 | 378 |
| 134 | 640 |
| 106 | 67 |
| 35a | 468 |
| 106 | 67 |
| 149 | 289 |
| 106 | 67 |
| 60a | 191 |
| 106 | 67 |
| 164 | 157 |
| 106 | 67 |
| 68a | 159 |
| 106 | 67 |
| 171 | 562 |
| 106 | 67 |
| 73a | 53 |
| 106 | 67 |
| 101a | 7350 |
| 106 | 67 |
| 215 | 4343 |

officer or agent are within the powers of the company or within the scope of his apparent power, notwithstanding such officer or agent has no power to do such acts or make such contract under the private rules and regulations of the company. In such case, the company, as to strangers having no notice of its private rules and regulations, will be estopped to deny the power of its president or general agent.

7. SAME—*power of the president to bind by his contract.* As a general rule the president of an insurance company has the power to bind the company within the scope of its powers, and any one not connected with the company will not be presumed to have notice of any by-law or rule limiting the apparent power of such officer.

8. LACHES—*in filing bill to redeem from sale under a deed of trust.* Where land was sold under a deed of trust, and purchased by the creditor, an insurance company, under an agreement on the part of the purchaser to hold the trustee's deed as a further security for the debt, and to give the debtor further time in which to redeem, a delay of three years in filing a bill by the debtor to set aside the trustee's deed, and for redemption, was held not to be such an unreasonable delay as to bar the relief sought.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. SWETT & HASKELL, for the appellant:

The arrangement, as it is pretended, for an extension of time, is obnoxious to the Statute of Frauds. Here, too, was a corporation, and the disposition of its property was vested in a finance committee. Mr. Warfield had authority, as agent, to collect this deed and to foreclose the mortgage, but not to arrange with White that he might, at any indefinite time, redeem the property. It was the duty of White, if he arranged with Warfield, to ascertain his powers. If he did not he must suffer the consequences of his want of authority to bind the corporation.

Messrs. MONROE & BALL, for the appellee:

The rule in equity, once a mortgage always a mortgage, applies here. No act or artifice of the parties is allowed to nullify this rule. Any agreement or stipulation cutting off the right of redemption has always been held utterly void.

While a promise to extend the time of redemption beyond the period named in the mortgage, if made after the time limited has passed, will have no effect if not founded on a legal and sufficient consideration, if made before such limited time expires, though without consideration, it will be enforced by the courts.   2 Jones on Mortgages, sec. 1053; *Chase* v. *McLellan,* 49 Maine, 375; *Ross* v. *Sutherland,* 81 Ill. 275; *Davis* v. *Dresback,* id. 393; *Dodge* v. *Brewer,* 31 Mich. 227; *Stephens* v. *Illinois Mutual Fire Ins. Co.* 43 Ill. 327; *Pensoneau* v. *Pulliam,* 47 id. 58.

It is claimed that the agents of the corporation had no power to make such arrangement.   Having held the agent out as having such power, the corporation can not urge its private rules and regulations to defeat the rights of strangers dealing with such agents acting within the apparent scope of his authority.   Herman on Estoppels, secs. 538, 509.   .

Mere delay in filing a bill for relief, short of a period fixed as a bar by the Statute of Limitations, will not preclude the assertion of an equitable right.   *Gibbons* v. *Hoag,* 95 Ill. 45.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit in equity to set aside a sale of real estate by a trustee, and to redeem the property from the trust deed. It appears that on the 4th day of June, 1875, the insurance company loaned to White $18,000, for five years, at nine per cent interest, the interest payable semi-annually; that White secured the loan by a deed of trust on the land sought to be redeemed by this bill, conveying it to L. D. Boon, with the usual powers contained in such deeds.   Default was made in the payment of the interest after the 4th of June, 1877, and also in paying taxes on the land.   The trustee, on the application of the insurance company, advertised and sold the property, and it was bid in at the sum of $10,000, by the company, and a conveyance was made to the company. The bill was not filed until about three years after the sale

of the premises. On a hearing in the court below the relief asked was granted, and a redemption decreed on the payment of the principal, advances for taxes, etc., with interest on the entire amount thus due the company. From that decree the company appeals, and the record is brought to this court, and various errors are assigned.

It is insisted in affirmance of the decree, that previous to the sale it was agreed that appellee should have a reasonable time afterward to redeem. This appellant denies, and insists that if it is proved the agreement is not in writing, the contract is void under the Statute of Frauds. Appellee testified that when De Witt, the president of the company, was in Chicago, in June previous to the sale, such an arrangement was made between them. This is denied by De Witt. Their evidence is clearly and positively contradictory, and to determine which has sworn truthfully we must look to the attending circumstances that may corroborate the one or the other, and also to the testimony of other witnesses who testified in the case. De Witt is to some extent corroborated by Gallery, who testifies he was a clerk in the office of the company, and testifies that he was present at the interviews between De Witt and appellee, and that he heard no such agreement made. He states he believes he heard all the conversation between them, but heard nothing of the kind. On the other hand, Warfield, the general agent of the company for this State, largely corroborates the statement of appellee. He testified he heard them conversing on the subject, and De Witt said to appellee that he did not want to report this loan to twenty-seven States with so much over-due interest,—that he preferred to report it as real estate. He said the company did not want the property,—did not want to speculate on appellee's misfortunes. All the company wanted was the money due, but he could not report it with so much over-due interest, —that he must foreclose, and perfect the title. He also testified that De Witt said to appellee he did not want a loan

showing so much back interest, and therefore he must fore-
close. Appellee asked, in that case, how long a time De Witt
would give to redeem, and he replied: "We won't agree to
carry this forever, but if you come in within a reasonable
time with your money, you can have the land. We do not
want it, nor do we want to make money out of your misfor-
tunes." The witness further says, before the sale it was his
understanding that appellee would come within a reasonable
time and pay up. This scarcely leaves a doubt that appel-
lee's version of the matter is the true one, and there was an
arrangement that he might redeem within a reasonable time
after the sale.

But if that was not sufficient, the attending circumstances
remove all doubt. Before the sale the company had the
property valued by two experts, and one of them fixed the
value at $45,000, and the other at $48,000, and the debt,
interest and advances in payment of taxes, etc., at the time
of sale did not exceed $27,000, all told. Appellee had made
arrangements with Moran to advance the full amount of the
debt, interest and costs, and buy the property at the trustee's
sale, and give appellee time to redeem; but on conversing
with Warfield, the general agent, he said he would carry
out the arrangement appellee had made with De Witt, when
Moran replied the terms were better than he could give ap-
pellee, and he would not purchase. With this understanding
between appellee, Moran and Warfield, the latter was per-
mitted to bid in the property at $10,000, to save commissions
to the trustee on the sale. In view of these facts, with our
knowledge of human nature, is it possible for any sane man
to believe that appellee would have stood by, when Moran
was present, ready, and fully prepared to bid and pay the
full amount, and lose $20,000, and leave an indebtedness of
about $17,000 on this debt against him, when it could and
would have been prevented, unless he had assurances of time
to redeem, on which he believed he could rely? It is incred-

ible he would not have prevented such sacrifice on the property, and leave such a debt hanging over him, when Moran was there ready, willing, and fully prepared to prevent it, had not the necessary assurances been given that appellee should have a reasonable time to redeem. Moran went to the sale to see his friend obtained such assurances, or purchase the property and prevent the disastrous results that would have followed an unconditional purchase by the company, even in full satisfaction of the debt.

Again, Warfield, on repeated occasions after the sale, when applied to by persons desiring to purchase the property, referred them to appellee as having an interest in it. He, also, through a friend of appellee, endeavored, after the sale, to purchase a release of the equity of redemption, and procure appellee's release. Can any one believe that a business man of the most limited capacity would have thus acted, and much less the general agent of the company for the State, employed for his superior skill and business capacity, unless there was such an agreement as appellee claims? These acts, of themselves, would seem to prove there was an agreement that appellee might redeem after the sale. They seem to settle the question beyond all cavil.

All the circumstances considered, in connection with what the witnesses testify was said, we are irresistibly impelled to conclude that there was the agreement made as appellee claims. If there was no such agreement, then the officers of the company committed an egregious fraud on appellee and Moran in inducing them to believe there was such an agreement, for the purpose of obtaining property worth from $45,000 to $48,000 for $10,000. One or the other proposition is inevitably true, and we believe the former the true state of facts. But if either is true it leads to the same conclusion.

But it is claimed that conceding such an agreement was made, it was not in writing, and is invalid, and can not be

enforced. A deed of trust is, in almost every respect, a mortgage. It is, according to the modern doctrine, like a mortgage, a mere security for the payment of money, or the performance of certain agreements or undertakings by the mortgagor. It has been repeatedly held by this court that the debt is the principal, and the mortgage the incident depending upon and following the debt. When the debt is paid the mortgage is satisfied, in law. As long as the debt remains the mortgage exists, unless actually released; and the rule of law is, that once a mortgage always a mortgage, until the debt is satisfied and extinguished, or the equity of redemption is foreclosed or released. In equity the mortgage still exists, whatever form the parties may give the transaction, unless it is intended by both parties that it shall be released and extinguished.

It is the doctrine of all courts of equity that a deed absolute in form is but a mortgage if made as a security, and it will be treated and enforced as such. As early as in the time of Lord NOTTINGHAM, it was held where a man had procured a deed for land under an agreement to give back a defeasance, but refused, that the court would afford relief, and treat it as though the defeasance had been executed, notwithstanding the Statute of Frauds was pleaded. (5 Viner's Abridgment, 523; Brown on Frauds, sec. 441.) It was not intended by the adoption of the statute to facilitate the perpetration of and to protect fraud, but to prevent it, and the courts have never lent themselves to assist or protect fraud, which the statute did not sanction by its adoption. The courts will not permit the statute to be used as an engine of fraud, as its purpose was its suppression.

In the case of *Reigard* v. *McNeil*, 38 Ill. 400, it was held that where a debtor in execution procured another to purchase his land at the execution sale, and pay the money, with an agreement that the debtor should have time to redeem, but the purchaser refused to permit a redemption,

he only obtained the title as a security, and a redemption was decreed,—and this was on a verbal agreement between the purchaser and the debtor.

In *Schoonhoven* v. *Pratt*, 25 Ill. 457, where a party held a deed of trust on land to secure a debt, and agreed with his debtor if he would pay him a sum larger than the interest that he would extend the time of payment, and the money was offered and refused in the absence of the debtor, but according to the terms of the agreement, and the land was sold under the deed of trust, and purchased by the creditor, on a bill the sale was set aside and a redemption allowed; and the case was placed on the grounds that the debtor was induced to rely on the promise of the creditor, and was thereby prevented from making a redemption within the time limited, and the creditor would not be permitted to profit by his breach of the agreement.

Again, in the case of *Pensoneau* v. *Pulliam*, 47 Ill. 58, where parties held mortgages on their debtor's lands, it was agreed that there should be a foreclosure and the mortgagees should bid in the lands, and the debtor should have time to redeem, but no specific time was fixed when he should redeem. It was held the agreement was binding, and it was enforced in equity,—and this, like the last case, was a verbal agreement. It was there held that the foreclosure and sale did not change the relation of the parties, and they were still mortgagor and mortgagees,—that the foreclosure and purchase was intended merely as a security for the debt, and not to bar the equity of redemption. To the same effect are the cases of *Stephens* v. *Illinois Mutual Fire Ins. Co.* 43 Ill. 327, and *Davis* v. *Dresback*, 81 Ill. 393, and other cases in this court might be cited in support of the doctrine; and this must follow, where it is held that a deed absolute in form may be shown by parol to be a mortgage. Nor is this tribunal alone in holding this doctrine, as it obtains in other jurisdictions, and has been announced by other respectable

courts.  It then follows, as there was a sufficient contract to extend the time for a redemption, there was no error in the decree allowing it, unless appellee is precluded on some other grounds.

It is urged that under the by-laws of the company neither De Witt, the president, nor Warfield, the general and contracting agent for this State, had power to make this arrangement,—that such power was alone in the board of directors. If there are such rules and regulations they can not bind persons having no knowledge of their existence.  The home office is in a distant State.  Its rules and by-laws are in their possession, and not open to inspection by the public, and persons not connected with the company are not presumed to know what their private books and journal contain. As a general rule the president of a corporation has power to bind it, within the scope of its powers.  In this case, Warfield had been the general agent of the company, superintending all its business in this State, making loans and collections, without any apparent limit on his power.  This arrangement was manifestly within the power of the company, and when acting through its president and general agent, within the scope of what was their apparent power, the company is estopped to deny they had power.  To permit the denial of such power, under such circumstances, would enable such bodies to perpetrate monstrous frauds and injustice.  Courts can never tolerate such a claim, after holding out such agents as possessing power to perform such acts.

It is also urged that the suit was not brought in a reasonable time after the sale.  We do not regard the delay, under the circumstances, as unreasonable.  The purpose of the organization of the company was to transact an insurance business, with incidental power to loan money to accumulate funds to meet losses.  Its purpose was not to buy, sell and speculate in real estate, or to hold real estate, except where, from necessity, it was compelled to purchase to prevent loss.

Here, the company will, on redemption, receive every cent of principal, expenditures and costs, with full interest on all appellee equitably owes the company. It has made no improvements on the property, but it remains in the same condition as when the company purchased. Thus it is seen that it has sustained no loss, but gets the full amount to which it is entitled, under each and every agreement made with appellee. The company having acted in bad faith with appellee, it is in no condition to demand hard, prompt or rigorous terms.

The entire record considered, we perceive no error that should reverse the decree, and it must be affirmed.

*Decree affirmed.*