## William Schroeder v. William H. Wolf.

### Gen. No. 12,539.

1. TRUST DEED—*what does not release lien of.* The lien of a trust deed is not released until the debt secured thereby has been paid.

2. ATTORNEY—*extent of authority to cancel obligation to client.* An attorney has no power, without express authority, to cancel and mark "paid" an obligation due to his client.

3. RECORDS—*effect of failure to examine.* One who purchases real estate without examining the public records does so at his peril.

Foreclosure proceeding. Appeal from the Circuit Court of Cook County; the Hon. JOHN L. HEALY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed June 26, 1906.

**Statement by the Court.** This is an appeal from a foreclosure proceeding begun by appellee, as the holder of a note for $1,200 made by one Thomas Cronin, September 8, 1894, payable to his own order and by him indorsed, secured by a trust deed to Charles C. Schumacher as trustee, which conveyed the premises therein described.

It appears that complainant was the owner of said note and left it with three coupons and the trust deed with said Charles C. Schumacher, to be foreclosed, receiving from him a receipt therefor, which stated that he received the papers "to be foreclosed." Subsequently Schumacher handed the instruments to a lawyer with instructions to begin ejectment and foreclosure proceedings. This was done and as a result of negotiations apparently brought about

by the litigation, Cronin and wife upon receipt of $75 paid them by Schumacher, executed and delivered a deed conveying the mortgaged property to one Maggie A. Horn, an employee of Schumacher's, and the latter caused the original notes and trust deed to be marked "Paid February 15, 1899." The foreclosure and ejectment suits were then dismissed, but the Cronin trust deed was not released. Of these proceedings, conducted under the direction of Schumacher, complainant Wolf, the owner of the note and trust deed, was apparently ignorant. Subsequently, March 20, 1899, Maggie A. Horn, Schumacher's employee to whom the title to the mortgaged premises had been conveyed by the Cronins, conveyed the land at Schumacher's direction to one Frank M. Dimond. The deed making this conveyance was recorded April 10, 1899, and contained an error in description which was corrected by a later deed of June 22, 1903, recorded June 23, 1903. Meanwhile Dimond executed and delivered a note dated January 7, 1902, for $1,500 payable to his own order and by him indorsed, secured by a trust deed to Schumacher as trustee.

The situation then was this: Schumacher who had received for foreclosure from complainant Wolf, its owner, the original note and trust deed made by Cronin, had made an arrangement with the debtor and obtained a conveyance of the mortgaged property to an employee of his own who held it for Schumacher himself. He apparently concealed the transaction from appellee Wolf and had the land conveyed to a third party named Dimond, who also took title and held it for Schumacher, gave no consideration for the conveyance and himself had no interest in the property. At Schumacher's request and as a favor to him, Dimond executed a note for $1,500 to his own order and by him indorsed, which was secured on the land by trust deed to Schumacher as trustee. Both the note and trust deed were delivered to Schumacher, this transaction also being, so far as appears, without the knowledge of complainant Wolf. Schumacher then in 1902 sold the Dimond note of $1,500 dated June 7, 1902, with interest coupons and trust deed of

the same date obligingly made for him by the latter, to Anna Schroeder, since deceased, receiving therefor the full face value, which, so far as appears, he seems to have appropriated to his own use. Neither she nor her agent examined the records to ascertain the condition of the title.

Appellee Wolf filed his bill to foreclose the original Cronin trust deed which with the note for $1,200 thereby secured he had placed in Schumacher's hands for foreclosure and collection, claiming that said note has never been paid. On the other hand appellant as administrator of the estate of his mother Anna Schroeder, deceased, who seems to have purchased of Schumacher in good faith the note given by Dimond for $1,500, secured by the latter's trust deed on the same land, claims that the Cronin note was actually paid and cancelled, and that Schumacher was, in effect, authorized by Wolf to do what he did.

The master found in favor of appellant's contention that Anna Schroeder must be considered a *bona fide* purchaser for value without notice of complainant's claim, and recommended that appellee's bill be dismissed for want of equity. The chancellor sustained complainant's exceptions to the master's report, found in favor of complainant and decreed the sale and foreclosure of the premises to satisfy complainant's claim.

MASON & WYMAN, for appellant.

J. G. GROSSBERG, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is apparent from the undisputed evidence that the original trust deed executed by Thomas Cronin September 8, 1894, never having been released of record, was not discharged nor its lien affected by the unauthorized arrangement made by Schumacher in accordance with which he secured a conveyance of Cronin's equity in the premises in controversy nominally to Maggie A. Horn, his employee, but actually for his own use and benefit, as his subsequent conduct disclosed. When Mrs. Anna Schroeder, deceased,

by her agent purchased from Schumacher the note and trust deed made by Dimond she seems to have accepted it and paid the money for it in blind reliance upon Schumacher's honesty. Had she caused the records to be examined she would have discovered that the Dimond trust deed purported to convey at the most nothing but the equity in the property therein inaccurately described, subject to the original Cronin trust deed owned by appellant. Schumacher had never ventured to release the Cronin trust deed of record, having, so far as appears, no authority to do so and possibly fearing the consequences which might result to him if he did so. At the time of her purchase, an examination of the record would have shown not only that Dimond had at the best nothing more than an equity in the land covered by his trust deed, but that he did not even possess that, the conveyance to him by Maggie Horn covering a lot in "block 5 in Corwith's resubdivision" instead of "block 15," where the land in controversy is located.

The Cronin note secured by his trust deed was not paid, nor was the trust deed satisfied by the transaction which resulted in Cronin's conveying his equity to Maggie Horn for Schumacher. The latter paid Cronin $75 for the conveyance of his equity, but as Cronin's testimony shows, the note never was paid. The trust deed never was released of record. No reason appears, therefore, why appellee could not maintain his bill of foreclosure. The mere marking of the note and trust deed "paid" did not affect the fact, and so far as appears, the deceased, Mrs. Schroeder, made no examination to ascertain the condition of the title and never knew of the existence of appellee's trust deed. She was not, therefore, deceived by Schumacher's fraudulent and false indorsement on appellee's note and trust deed, which she never saw. See Jones on Mortgages, 6 Ed., sec. 918, also sec. 967. In Hilliard on Mortgages, Vol. 1, Chap. XVII, sec. 3, it is said that the general rule is that "nothing short of actual payment of the debt or an express release will operate as a discharge of the mortgage. The lien lasts as long as the debt." Schumacher as agent of appellee had,

so far as appears, no authority to buy Cronin's equity of redemption for $75, and his subsequent conduct is inconsistent with the view that it was in any way authorized by appellee, the owner of the incumbrance. Even as between appellee and Cronin, the act of Schumacher in marking the notes and trust deed as "paid" would not operate to release the debt. In McClintock v. Helberg, 168 Ill. 384–392, it is said that "an attorney has no power without express authority to bind his client by a compromise of a pending suit or other matter intrusted to his care. * * * He cannot commute a debt or materially change the security which his client may have without his consent; nor has he the power to assign or sell a claim or judgment of his client without special authority." There is no evidence tending to show that Schumacher was the agent of appellee to purchase Cronin's equity nor to write "paid" upon the note and trust deed in his possession. As said in Keohane v. Smith, 97 Ill. 156–160, "The fact of such agency was an affirmative issue resting on defendants to prove." This has not been done.

We find no material error in the decree complained of and it must be affirmed.

*Affirmed.*