MAUDE GRAHAM et al., Appellees, v. JOHN J. WILLIAMS et al., Appellees; JENNIE AXMEAR, Appellant.

No. 45218.

AUGUST 6, 1940.

REHEARING DENIED DECEMBER 13, 1940.

Robt. J. Shaw and McCoy & McCoy, for plaintiff-appellees.

Devitt, Eichhorn & Devitt, for Reynolds, appellee.

H. S. Life, for John J. Williams, C. Dwight Williams, and Julia Williams, appellees.

H. E. de Reus and H. S. Life, for appellant.

1262

BLISS, J.—The questions in the case are few and clear, but the facts and the pleadings and procedure are somewhat involved. The substantial chronology of the facts will be stated first. On October 10, 1931, the plaintiffs Maude Graham and Capt. E. Graham, mother and son, received as joint and equal owners, from the defendant John J. Williams and his wife Olie, their note for $6,000, due in seven years, and their mortgage securing it, covering 264 acres of Keokuk county land, recorded October 16, 1931. On January 20, 1935, the plaintiffs sold and transferred this note and mortgage, in blank, to the defendant R. M. Reynolds, in exchange for oil stock or certificates, on which the holder would receive specified monthly royalties. On January 24, 1935, the plaintiffs executed the assignment of the mortgage, and subsequently Reynolds filled in the name of Geo. F. McCarty as assignee, and it was recorded on October 4, 1935. On September 21, 1935, John J. Williams and wife conveyed, by warranty deed, the mortgaged premises to their son, the defendant, C. J. Dwight Williams, and the deed was recorded on the same day. On September 21, 1935, C. J. Dwight Williams and his wife, the defendant Julia Williams, executed to the defendant Reynolds their note for $3,000, due in three years, and their mortgage securing it, covering 190 acres of the land above referred to. This mortgage was recorded on October 4, 1935. On October 3, 1935, Geo. F. McCarty released the mortgage of $6,000, the assignment of which he held, and the release was recorded on October 16, 1935.

It appears that Reynolds, in the sale of his securities, had operated in a number of counties, including those of Mahaska, Wapello and Keokuk. Some time in 1934 he first called upon the appellant at her home in Oskaloosa. At the time of the trial she was 79 years old and her health for a few years was not at all good. In the investigation of the operations of Reynolds, a Mr. Ryan, of the security department of the state, called upon her in the hospital, in June 1937, and took from her an affidavit of her dealings with Reynolds. The plaintiffs introduced this affidavit in evidence. It states that in Janu-

ary 1934 she exchanged 60 shares of stock with Reynolds for shares of oil royalties. In 1935 he procured from her a farm mortgage of $12,000 or $14,000 which she owned, in a like exchange. A little later she exchanged an $8,000 mortgage on a house in Bussey, and also a residence property in Oskaloosa for shares of oil royalties. He next came to her home and induced her to let him have $1,500 in government bonds, which he stated he was going to use in a deal. For these he gave her his note for $1,700. When this note became due he came to her home and gave her a renewal note for $1,823, dated December 6, 1935, due in six months. This note was on a blank form of the Mahaska County State Bank, then in receivership. The name of the bank was printed on the note and in executing it this name was apparently, by inadvertence, not canceled; and the name of the appellant inserted. But this note was the evidence of his indebtedness which Reynolds gave to her. This fact is further confirmed by testimony of the vice president of the bank, who, as a witness for the plaintiffs, stated that the bank had been in receivership since March 1932, and that Reynolds had never done any business with the bank and that the bank never held any note of his. We call particular attention to these matters, because it was on this note that the appellant procured her judgment on confession against Reynolds, under the execution sale held at which she purchased the $3,000 note and mortgage, and because the appellees attack the judgment and sale as spurious.

In the testimony of the appellant in her own behalf, taken before the court reporter in her home, some further details of her dealings with Reynolds are given. It appears that no royalties had been paid her by Reynolds since about June 1936.

Sometime in the spring or early summer of 1937, Capt. E. Graham and his father and mother, came from their home at Delta, in Keokuk county, and called upon the appellant at her home, and stated that since Reynolds had told them that she had dealt with him, they wished to know if she was still getting royalties. They told her that their royalties had ceased about June 1936. She told them that she knew Reynolds to her

sorrow and that she thought he was a rascal. They did not seem to think so and they asked her why she so referred to him, and she told them because of the way he had procured money from people. They told her that he had procured property from them but did not state the nature of it. The plaintiffs' version of this interview is not greatly different from that of the appellant, except that they testified, under quite leading questions, that they told her they had given Reynolds real estate and real-estate mortgages. They said that they had not told her of any particular mortgages. The appellant denied that there was any talk about mortgages. She also testified that in her dealings with Reynolds he never told her of anyone else with whom he was dealing except a Mr. Dasher. The plaintiffs had begun their dealings with Reynolds in 1934 or earlier as the husband of Maude Graham testified that they had received royalties from about February 1934 to June 1936, and that they were satisfied with their dealings until the royalties ceased.

Reynolds was indicted in Wapello county on June 7, 1937, on another transaction, and pleaded guilty to a violation of the securities law and was sent to the penitentiary. About this time the appellant learned from Geo. F. McCarty, who was an investment broker in Oskaloosa, with whom she had some dealings; that he had some papers belonging to Reynolds, but that he had a lien on them. He gave her no information as to the nature of the papers. This information came to her either just before she went to the hospital or while she was in the hospital. She employed Mr. Life as her attorney to look after the matter for her. He took the note for $1,823 which Reynolds had given her on December 6, 1935, and procured from Reynolds, on December 4, 1937, a sworn statement for confession of judgment admitting that he was indebted to appellant in the sum of $2,125.81, being the amount stated in the note with interest to November 20, 1937, and authorizing the clerk of the court to enter judgment in favor of the appellant and against him as set out in the statement. Judgment was entered by the clerk at the November 1937 term, on De-

cember 4, 1937, and was signed and approved by the presiding judge. Levy was made under execution issued and sale was had by the sheriff on January 8, 1938, to the appellant as the highest bidder, all as provided by statute. On the same day the sheriff executed a bill of sale conveying to the appellant the $3,000 note, mortgage and abstract of title, for a recited consideration "of the said sum of One Thousand Seven Hundred ($1700.00) Dollars and costs in the amount of $37.85, in hand paid by the said Jennie Axmear." The bill of sale was recorded February 3, 1938. On January 9, 1938, Mr. Life as attorney for the appellant, acknowledged in writing that Geo. F. McCarty had a lien on the property sold and the proceeds therefrom of $772.53.

The plaintiffs filed their petition on October 24, 1938. Paragraphs 1, 2, 3, 4, 5, 7 and 8 allege the execution of the mortgages, assignment, release, and deed referred to in the forepart of this opinion, and of which there is no question. Paragraph 6 states that Geo. F. McCarty was the agent of Reynolds without benefit to McCarty. Paragraph 9 alleges the fraudulent procurement by Reynolds of the $6,000 note and mortgage. Paragraph 10 alleges the claim of the appellant but avers that any such claim is junior and inferior to theirs. Paragraph 11 alleges that the assignments, releases and mortgages made after January 23, 1935, are void because of the alleged fraud. Plaintiffs prayed that the assignment to McCarty, the release by McCarty, the mortgage to Reynolds, and any claimed interest of the appellant in the Reynolds mortgage, be declared void and canceled of record and that the $6,000 mortgage be reinstated as a first lien.

The Williamses filed answer denying generally, and admitting the execution of the instruments, alleging their good faith, and absence of any knowledge of any right or interest of plaintiffs, the ownership of the appellant, and waiver, estoppel, and laches on the part of plaintiffs.

The appellant filed a similar answer, and fully set up her claim, and also filed a cross-petition, including the allega-

tions of her answer by reference, and prayed for a decree establishing her ownership of the $3,000 note and mortgage.

On August 31, 1939, the plaintiffs filed a reply to the Williams' answer denying all allegations except such as admitted allegations of the petition, and alleging that the Williamses were only nominal defendants with no interest in the litigation. On the same day plaintiffs filed an answer to the appellant's cross-petition denying all allegations thereof except those admitting allegations of the petition, and further specifically denying that the appellant was a good faith purchaser for value of the note and mortgage without notice of plaintiffs' rights. On the same day plaintiffs filed amendment to their petition alleging that all transactions and instruments executed in connection therewith by the Williamses, Reynolds and McCarty were a part of a general scheme to cheat and defraud plaintiffs, and that the latter were at all times the owners of the $3,000 note and mortgage, and that Reynolds never had any interest therein, and the appellant took nothing by her sheriff's bill of sale. They prayed for such a decree.

This was the status of the pleadings when the case was set down for trial to be heard at 10 a. m. on September 5, 1939. At 7:59 a. m. on September 5th plaintiffs filed a reply to appellant's answer, and a second amendment to their petition alleging that on discovering the fraud of Reynolds they rescinded the contract of exchange and tendered to him the oil stock, which tender they then renewed. There is no allegation that they tendered the royalties they received. At 8:38 o'clock that morning the Williamses and the appellant each filed a separate first amendment to their answer and answer and cross-petition, respectively, denying the allegations of plaintiffs' first amendment. At 9:21 o'clock that morning Reynolds filed an answer to plaintiff's petition and amendments thereto, verified by J. L. Devitt, his attorney, on August 29, 1940. Reynolds was then in the penitentiary. In this answer there is neither a general nor a specific denial of any allegation of the plaintiffs' petition or of any amendment thereto. It admits paragraphs 1, 2, 3, 4, 5, 7 and 8 of the petition.

These paragraphs refer to the execution of the various instruments, of which there is no dispute. Paragraph 6 states that McCarty was the agent in these transactions without benefit. This answer admits the agency but alleges that "in his opinion George F. McCarty was compensated for such services as agent." The answer is silent as to every allegation of the petition and amendments thereto of the fraud of Reynolds and the general scheme of him and the Williamses to defraud the plaintiffs. As to these and all other allegations, including those of rescission and tender, the answer neither admits nor denies. The answer prayed "for such order and decree as the court thinks equitable in the premises."

At 10:28 o'clock that morning, September 5, 1939, the court rendered a decree in the suit as against Reynolds. It recites the appearance of all parties but the appellant. It finds, as against Reynolds, that the allegations of plaintiffs' petition and amendments are true, and that the equities are with the plaintiff. It decrees that Reynolds procured the $6,000 note and mortgage from the plaintiffs by fraud and without consideration, and that the release of this mortgage was without consideration and through fraud of Reynolds and a general scheme to cheat the plaintiffs; that the $3,000 note and mortgage were but an extension and renewal of the $6,000 instruments, and were at all times the absolute property of the plaintiffs; and that the court retained jurisdiction to determine the rights of the appellant in and to this $3,000 note and mortgage.

At 10:45 o'clock that morning, the appellant filed a motion and exceptions to the proceedings, stating that the case had been assigned for trial at 10 a. m., and the defendants and their attorneys other than Reynolds were in the courtroom ready to proceed; that at 10:28 a. m., without the submission of any evidence in open court and without the knowledge of appellant's attorneys, who were present in court, the decree against Reynolds was filed; that the findings in the decree are without evidence supporting them, and, as evidence, neither the findings of the decree nor the answer of Reynolds is in

any way binding upon appellant. She asked that the decree be stricken from the record until the matter had been submitted in open court, and that in the event it was not stricken it should not be considered as evidence against or binding on the appellant. The motion was overruled as was also appellant's motion for continuance because of surprise. Appellant's objection to plaintiffs' offer in evidence of the decree, upon the grounds stated in her motion, was overruled. Plaintiffs filed another amendment to their petition alleging the invalidity of the judgment by confession and the execution sale based thereon. The plaintiffs and Ephraim Graham, the father, were witnesses for plaintiffs, but neither they nor any other witness gave any testimony in support of any allegation of the petition or of its amendments claiming fraud or any fraudulent scheme respecting the mortgage transactions.

Plaintiffs' right to recover is bottomed upon the establishment of these allegations as to fraud, rescission and tender. The only evidence offered or received in support of these allegations was the decree against Reynolds.

The first question for determination is whether these allegations of fraud and the plaintiffs' ownership of the $3,000 note and mortgage have been established. Counsel for plaintiffs in open court stated that they claimed only this note and mortgage.

In addition to the decree against Reynolds, the court rendered decree against the remaining defendants that the $6,000 note and mortgage was obtained by Reynolds from the plaintiffs through fraud, that the release of this mortgage was fraudulent, that the $3,000 note and mortgage was but an extension and renewal of the $6,000 note and mortgage, and that it was at all times the property of the plaintiffs, and Reynolds and Jennie Axmear never had any interest in them. The clerk was directed to deliver them to the plaintiffs. Appellant's cross-petition was dismissed.

As stated the plaintiffs offered no testimony whatsoever of just what their transaction was with Reynolds. The record is silent as to the amount of property which they received either

originally or in royalties. It simply shows that the $6,000 note and mortgage was exchanged for shares or certificates in oil properties which were to pay them royalties. There is no evidence as to any representations made by Reynolds, false or otherwise, or whether they were false, or they relied upon them, or the extent of their damage, if any. Their sole reliance to establish these matters, and the alleged fact of rescission and tender, is upon the answer of Reynolds and the decree against Reynolds. These matters are the basic, essential elements of their case. In our judgment they have wholly failed in establishing them. In the first paragraph of their brief and argument these appellees state that other than themselves and Jennie Axmear, "the other defendants are merely nominal parties and have no interest on the outcome of this appeal." Reynolds was one of these "other defendants." During the trial appellees' attorney, John McCoy, said: "That the only question involved in this action is whether or not Jennie Axmear, by the bill of sale, or by the sale, is entitled to the said plaintiffs' mortgage or whether the plaintiffs are entitled to their own mortgage." These statements are true. Reynolds had no interest whatsoever in this litigation. He was not a necessary party. There appears to be no reason or purpose in his being a party defendant, unless it was for the purpose of filing the kind of an answer which he did file. There was not even a paper defense made for him. Any interest he had in the $3,000 note and mortgage had been lost to him by the execution sale under his confessed judgment. He was a nominal defendant. He comes within the description of such a defendant as the Illinois court referred to in Martin v. Dryden, 6 Ill. 187, 208, in the following language:

"The general rule is that the answer of one defendant is not evidence against his codefendant. * * * Where he is nominally, and not substantially, a defendant; where his interest is with the plaintiffs; their object, his object; where he, as well as the plaintiffs, is seeking to show that Martin [his codefendant] acquired no lien, or rights under the attachment

and proceedings at law; it shall not be in the power of the parties, in such a case, to avail themselves of the answer of Warfield [the judgment debtor], who appears in reality, though not in form, to be a plaintiff.''

There is no diversity of opinion among the decisions and other authorities on this question. In 20 Am. Jur., §641, we find this language: ''The general rule is that the admissions of a defendant are not admissible against his codefendants unless they consent thereto, adopt the statements as their own, or there is privity between the defendant making the admission and the codefendants. This rule is particularly applicable where the interests * * * of the defendant whose statements are sought to be admitted in evidence is merely nominal.'' In an extensive brief on this question, the annotator in 41 A. L. R. 38, in stating the same rule, says: ''It is everywhere admitted.'' Numerous cases could be cited in support of the rule. We call attention to but a few of them where the circumstances and situations were quite like those in this case. Belton v. Apperson, 26 Grattan (Va.) 207; Blakeney v. Ferguson, 14 Ark. 640; Danner Land & Lumber Co. v. Stonewall Ins. Co., 77 Ala. 184; Field v. Holland, 6 Cranch 6, 3 L. Ed. 136; May v. Barnard, 20 Ala. 200; Conner v. Chase, 15 Vt. 764; Phoenix v. Dey, 5 Johns. (N. Y.) 412; Stackpole v. Hancock, 40 Fla. 362, 24 So. 914, 45 L. R. A. 814; Glenn v. Grover, 3 Md. 212; Clark v. Wilson, 127 Ill. 449, 19 N. E. 860, 11 Am. St. Rep. 143; Thames & Co. v. Rembert's Admr., 63 Ala. 561.

This case does not come within any of the exceptions. There was no joint relationship between Reynolds and the appellant. There was no privity of any kind between them. No succession of relationship created by instrument or by any other act.

The question was many years ago passed upon by this court, in Ayres v. Campbell, 9 Iowa 213, 217, 74 Am. Dec. 346, and in Jones v. Jones, 13 Iowa 276, 280. In the latter case it appears that Brown procured judgment against the firm of Campbell, Jones & Co., and as property of the firm could not be found, he levied on the property of John C. Jones, a member of the firm. Plaintiff enjoined the sale upon the

ground that he had bought and paid for the land and had received deed from John C. Jones, and had recorded it before the rendition of the judgment, but that the deed instead of describing the land purchased, mistakenly described other land. Afterwards the injunction was dismissed as to Brown and the sheriff, from which decree the plaintiff appealed. John C. Jones and his wife, the grantors of complainant, by their answer admit, while Brown denies, every material allegation of the bill. The plaintiff contended that Brown was bound by the admission in the answer of his co-defendant, Jones. Plaintiff contended also that the lien of the judgment creditor upon the lands of his debtor is subject to all of the equities which existed in favor of third persons against such lands at the time of recovery, and that a court of chancery will protect the equitable rights of third persons, against the legal liens of a judgment and will limit such liens to the actual interest which the judgment debtor had in the estate. The court said:

"Granted the rule, the question still remains, have we a case to which it applies? For, if complainant has no equitable right to the land levied upon, then the lien of the judgment is, as to him, unlimited. This equity is denied by the answer, for while it is admitted that a deed was made, it is denied that it was intended to convey any other lands than those therein described. Is this answer overcome? Certainly not, unless the answer of the grantor, Jones, is evidence against respondent, Brown.

"We are not of the opinion, however, that this case comes within the exceptions to the general rule, that the answer of one defendant in chancery cannot be read in evidence against his co-defendant. There is certainly no joint interest between the vendor, Jones, and the creditor, Brown, in the transaction. Nor does Brown claim through Jones, within the meaning of the exception as stated by Mr. Greenleaf, 1 Ev., §178. Nor was there any fraud, collusion, or combination, between them. Indeed, Brown claims not under or through his co-defendant, Jones, but against him. True, if he takes under his execution

1272

and sale, he acquires the title of the debtor, but he does not succeed to his estate, the right of Jones does not devolve upon him, there is no such priority of estate, as that he should be bound by what Jones may state in his answer. And especially is this so, when the answer, (treated as an admission or declaration,) was made long after the party answering has parted with his title."

The last sentence states a general rule, even though there should be privity. Reynolds lost all his right, title or interest in the note and mortgage months before his attorney filed his answer. Any admissions or presumptions from failure to deny at that time were not against his interest and were not admissible. He could not then disparage the title to property which he no longer owned. See also on this point the authorities above cited and Sawyers v. Sawyers, 106 Tenn. 597, 61 S. W. 1022; Rust v. Mansfield, 25 Ill. 336; Lake v. Moots, 215 Iowa 126, 244 N. W. 693.

One of the reasons given for the rule is thus stated in Pensoneau v. Pulliam, 47 Ill. 58, 63, "The reason why an answer of one defendant in chancery cannot be used against his co-defendant, is, because, as there is no issue between them, there can be no opportunity for cross-examination."

The findings in the decree against Reynolds could only have been bottomed on the Reynolds answer. Since the admissions in the answer or any inferences or presumptions from his failure to deny any allegations in the petition or its amendments were not admissible, the decree based thereon was not admissible. Furthermore the appellant was a complete stranger to the record and to the proceedings leading up to the decree that morning. Her attorneys were not present and knew nothing of the filing of Reynolds' answer, the argument to the court, or the rendering of the decree. Appellant's appearance was not noted in the decree, and yet the court made findings that were determinative of her case. See Costello v. Burke, 63 Iowa 361, 364, 365, 19 N. W. 247; Koch v. West, 118 Iowa 468, 92 N. W. 663, 96 Am. St. Rep. 394; McBride v. Harn,

48 Iowa 151; Haller v. Parrott, 82 Iowa 42, 46, 47 N. W. 996; Sawyer v. Kelly, 148 Iowa 644, 127 N. W. 977; Birrell v. Fidelity & Cas. Co., 193 Iowa 860, 872, 188 N. W. 26; Andrews v. Armagast, 184 Iowa 698, 702, 169 N. W. 190; Day v. Baldwin, 34 Iowa 380.

The decree should not have been admitted. Without it the plaintiffs failed to make a case. Since the decree must be reversed because of such failure, we will not pass upon the other questions urged, since the record may be different if the case is tried again. The decree is reversed.—Reversed.

RICHARDS, C. J., and MITCHELL, STIGER, SAGER, OLIVER, HALE, and MILLER, JJ., concur.