RAY L. PEARSON, Plaintiff-Appellee, *v.* VERNON R. SMITH *et al.,* Defendants-Appellants.

(No. 70-263;

Second District—September 10, 1971.

Paul F. O'Neil, and Fearer & Nye, all of Rochelle, and Victor, Hennelly & Gaziano, of Rockford, for appellants.

Cuve M. Glosser, of Rochelle, for appellee.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The plaintiff filed a suit in the circuit court of Ogle County on May 8, 1968, to foreclose a trust deed on Lots 9 and 10 of Sarver's Addition to the Village of Hillcrest, and it is from the decree of foreclosure that the owner of Lot 9, alone, appeals.

On the 6th day of August, 1962, Dallas and Flaudia Woolbright borrowed $30,000 from the plaintiff, executed their note in that amount due one year after date, and secured the same with a trust deed (mortgage) on the aforementioned Lots 9 and 10. A tavern and nightclub were built on Lot 10, but Lot 9 remained vacant. Upon the note becoming due, the Woolbrights paid the interest and obtained an extension on the payment of the principal for one year. Soon thereafter they conveyed the lots to Woolbright, Inc., a corporation that was family-owned, and that corporation on June 23, 1964, conveyed the said Lot 10 to Hillcrest Welcome Inn, Inc., for $40,000, which consisted of $10,000 in cash and $30,000 by assuming and agreeing to pay the existing mortgage (covering both Lots 9 and 10). Thereafter, on June 1, 1965, the family corporation sold Lot 9 to O'Neil & Co., for $3500, by warranty deed which does not mention the mortgage. Hillcrest Welcome Inn, although a corporation, was wholly owned by Erwin Hackman, and when the note as extended came due again on August 6, 1964, Hackman paid the interest and obtained another extension. Thereafter, interest was paid and the note was extended again in 1965 and 1966. The liquor license of Hillcrest Welcome Inn was revoked in 1967. The property became and remained vacant, and thereafter, because of default on the note and mortgage, this foreclosure suit was instituted.

It appears that the plaintiff, since 1964 and prior to instituting suit, dealt only with Hackman with reference to the payment of the note. It also appears that the plaintiff was not specifically advised that the Hillcrest Welcome Inn had assumed and agreed to pay the mortgage. He also was not advised as to any transfers of Lot 9 and never consented to an extension of the mortgage, although he had asked that the principal of the note be paid by the Woolbrights and Hackman but was advised that they were unable to do so. O'Neil & Co. knew of the mortgage at the time it purchased Lot 9, as its principal stockholder, an attorney, Paul O'Neil, handled that transfer as well as all the previous transactions herein mentioned and relating to Lots 9 and 10.

At the hearing on the foreclosure, the plaintiff waived a claim for personal liability against Dallas and Flaudia Woolbright by stipulation, as plaintiff's attorney had concluded that under Illinois law the extension

of the note precluded the recovery of a deficiency judgment against them. On May 14, 1970, the trial judge filed a memorandum opinion, and thereafter entered a decree of foreclosure on both Lots 9 and 10.

The appellant, O'Neil & Co., contends that the extension of the debt by the mortgagee to the grantee of a part of the premises (Lot 10), who assumed and agreed to pay the mortgage, without the consent of the original mortgagor, released the lien on the balance of the premises (Lot 9) so that it is not subject to foreclosure. We have found no Illinois case which decides the precise question presented herein. It is pointed out in 101 A.L.R. Anno., page 619, that there is a "dearth" of cases dealing with the question of how a mortgagee's release of his mortgagor's personal liability by dealing with the purchaser of a part of the mortgaged premises affects the lien of the mortgage upon another part of the property which has been conveyed by the mortgagor to a third party. The annotator concludes: "In those cases that have come before the courts, however, the terms of the conveyance, together with the amount of knowledge of the facts possessed by the mortgagee at the time of the release, appear to have been regarded as of major importance in the determination of the question." (*Seale v. Berryman* (1935), 101 A.L.R. 613, 49 P.2d 997, and the cases cited therein, lend support to the argument of O'Neil & Co.

We have found no cases of recent origin that cite and follow the *Seale* case. However, there are certain Illinois cases which gave us guidance in deciding the issue presented. In *Schroeder v. Wolf*, 127 Ill.App. 506, 509, the general rule is stated that "nothing short of actual payment of the debt or an express release will operate as a discharge of the mortgage." In affirming the decision of the Appellate Court, the Supreme Court (*Schroeder v. Wolf*, 227 Ill. 133), deciding the priorities as between two successive trust deeds on the same property, said, at page 135, with regard to appellee's trust deed which was the first trust deed:

"The only controversy here is between the holders of the two trust deeds. It also seems clear to us that since appellee's trust deed was duly recorded, it must be held that all subsequent conveyances of said premises are affected with notice of appellee's trust deed. This trust deed had never been released of record, and anyone examining the recorded title to the lot thereby conveyed would find the unreleased trust deed given to secure the $1200 note. Wolf has never received payment of this note and has been guilty of no act that will estop him from asserting his rights under the trust deed."

In an early Illinois case, *Union Mutual Life Ins. Co. v. White*, 106 Ill. 67, the court said at page 73:

"A deed of trust is, in almost every respect, a mortgage. It is, accord-

ing to the modern doctrine, like a mortgage, a mere security for the payment of money, or the performance of certain agreements or undertakings by the mortgagor. It has been repeatedly held by this court that the debt is the principal, and the mortgage the incident depending upon and following the debt. When the debt is paid the mortgage is satisfied, in law. As long as the debt remains the mortgage exists, unless actually released; and the rule of law is, that once a mortgage always a mortgage, until the debt is satisfied and extinguished, or the equity of redemption is foreclosed or released. In equity the mortgage still exists, whatever form the parties may give the transaction, unless it is intended by *both parties* that it shall be released and extinguished." Emphasis added.

In *Seeman v. Mills*, 197 Ill.App. 589, the court stated at pages 590 and 591:

"Defendant says that * * * the grantee, Wenzelis, became the principal debtor, and the defendant, the mortgagor, became the surety; that the agreement to extend the time of payment operated to release the defendant from the debt. This is not the law. Where a grantee under a deed assumes the debt of the mortgagor, the relation of principal and surety, if there is such a relation, only applies as between themselves. As to the mortgagee, the grantee becomes an additional promisor only. In *Scholten v. Barber*, 217 Ill. 148, 150, the rule is stated thus: 'In this State the rule is, that as between the mortgagor and his grantee who assumes the payment of the encumbrance, the grantee becomes principal debtor and the mortgagor becomes his surety. But the mortgagee is in nowise affected by the agreement to which he is not a party. He may disregard it and bring his action against the original debtor only, or he may accept the promise made for his benefit, and, treating it as an additional remedy, bring his action against the grantee. If the agreement is accepted by the mortgagee, each party to it is an original promisor for the payment of the encumbrance, but the contract rights of the mortgagee cannot be changed by any arrangement between the mortgagor and his grantee unless the mortgagee agrees to such change.' "

In *Prudential Ins. Co. v. Bass*, 357 Ill. 72, 75, the only question presented was whether or not the extension agreement entered into by the mortgagee and grantee of the mortgagor discharged the mortgagor from personal liability for the debt. The court held that, shortly after maturity of the note, the mortgagee had agreed to the extension and thereby deprived the mortgagor of the right to be subrogated by payment upon any other terms than those of the extension agreement. Thus, the court said that action of the mortgagee brought the case squarely within the

reason for the rule releasing a surety in such a case. It is clear that the court was discussing the personal liability of the mortgagor on the note and not the lien of the mortgage on the property. In *Conerty v. Richsteig,* 379 Ill. 360, after discussing many cases, the court concluded that the mortgage is not dependent upon the note executed by the mortgagors for its validity, and that the mortgage relates only to the real estate pledged as security for the debt. The court stated at page 366:

"The mortgage is applicable to the right to apply the security to the discharge of the debt and the note to the liability of the maker for the payment of that indebtedness."

and at page 368:

"The rule to be deduced from the above cases is, that the note and mortgage constitute separate contracts, and that any provision in the mortgage with reference to the time of payment of the debt, not found in the note itself, is no part of the note and does not affect the personal liability of the maker."

Under the facts of the *Conerty* case, the court concluded that the extension agreements therein released the mortgagor from personal liability to pay the indebtedness and that, therefore, the circuit court erred in entering a decree for a deficiency judgment.

■ It appears that the plaintiff never did anything, expressly or impliedly, to affect the validity of the mortgage lien on Lot 9. Appellant's argument that the release of the mortgagors' personal liability released the debt and, thereafter, there could be no debt for which the realty is pledged as security is without merit under Illinois law which treats the note and mortgage as separate contracts.

■ The decision of the trial judge, in directing foreclosure of the mortgage on Lot 9, was proper and substantiated by the Illinois cases cited herein. Therefore, the decree of the circuit court is affirmed.

Decree affirmed.

MORAN, P. J., and GUILD, J., concur.