THE HOME NATIONAL BANK OF CHICAGO

*v.*

ESTATE OF JAMES S. WATERMAN.

*Filed at Ottawa October 31, 1890.*

134   461
45a  167
―――――――
134   461
73a    47
134      461
106a  ⁵217

1. CONTRACT—*original or collateral—contract of guaranty.* A written agreement on the part of certain stockholders of a private corporation, with a bank, which held the notes of the corporation to the amount of $20,000, secured by certain collaterals, guaranteed the bank that if it would give up such collaterals to the corporation they should be re-placed, or if not, the bank should be paid by a day named, which guaranty was accepted and acted upon : *Held,* that the contract of the signers of the agreement was that of guarantors, and that such guar-anty was collateral to the debt of the corporation, which still subsisted.

2. SAME—*original or collateral contract—the rule for determining.* Whether an engagement is original or collateral, is to be determined not alone from the particular words used, but from a consideration of both the terms of the contract and the circumstances of the transaction.

3. If the original indebtedness is extinguished, as, when the creditor surrenders his debt or demand against his original debtor and accepts the promise of a third person as a substitute therefor, such new promise is an original and direct undertaking, and binding on the maker in the first instance, and at all events. When there is no continuing liability of the original debtor, there is nothing to which a promise of another can be collateral.

4. SAME—*promise of stockholder to pay debt of corporation.* A corpo-ration and its stockholders are not one and the same, so that a promise by a stockholder to pay a corporation debt is, in every sense, a promise to pay the debt of another.

5. SURETY—*release—extension of time.* If a creditor, by a valid and binding agreement, without the assent of a surety, gives further time for payment to the principal debtor, the surety will be discharged.

6. SAME—*surety indemnified—extension of time no release.* A surety who is fully secured by property in his hands is estopped from object-ing to any enlargement of the time of payment made by agreement between the creditor and the principal, and is not discharged by such enlargement. The burden of proof is on the creditor to show that the surety or his estate was actually indemnified.

7. SAME—*death of surety—revokes authority to extend time of pay-ment.* The death of a surety operates as a revocation of the authority

of the principal debtor, under an agreement, to make a contract for the extension of the time of payment.

8. DEBTOR AND CREDITOR—*extension of time to one of several debtors —operating as a release of the other debtors.* Where two persons are bound for the same debt, and there is an obligation on the part of one to reimburse the other in case of payment being enforced against such other, and this is known to the creditor, then the creditor can not extend the time of payment to the party ultimately liable, without discharging the other debtor, even though such other debtor occupies the position of principal debtor to the creditor.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Kane county; the Hon. ISAAC G. WILSON, Judge, presiding.

On the 10th day of August, 1882, the Sycamore Marsh Harvester Manufacturing Company was indebted to the Home National Bank of Chicago, for money loaned, to the amount of $20,000, evidenced by two promissory notes, each for the sum of $10,000, made by said Sycamore Marsh Harvester Manufacturing Company, one dated June 5, 1882, and the other dated June 26, 1882, both payable in ninety days after date.    On said 10th day of August, 1882, said bank held, by pledge of said manufacturing company, and as collateral security to said claim of said bank against said manufacturing company, nine packages of farmers' notes, so called, being notes originally taken by said manufacturing company for goods sold by it to farmers and others about the country,— said nine packages being numbered, respectively, 0302, 0413, 0568, 0653, 0654, 0655, 0659, 0662, 0663, the total amount of which notes, at their face value, was $21,116.71.   On said 10th day of August, 1882, C. W. Marsh, W. W. Marsh, William Loomis, James S. Waterman, Charles Brown, Charles Kellum and O. M. Bryan, being stockholders of said Sycamore Marsh Harvester Manufacturing Company, and owning a large majority of the stock of said company, executed and delivered to said bank their written agreement, of which the following is a copy:

"*Geo. W. Fuller, Esq., Cashier Home Nat. Bank, Chicago, Ill.:*

"DEAR SIR—We, the subscribers, stockholders of the Sycamore Marsh Harvester Manufacturing Company, hereby guarantee, if you will deliver to C. W. Marsh, Pres't, or to A. M. Stark, Sec., of said company, the farmers' notes now held by your bank as collateral to its claims against our said company, (said notes being contained in packages 0302, 0413, 0568, 0653, 0654, 0655, 0659, 0662, 0663, total, $21,116.71,) for the purpose of collection, that said collaterals shall be replaced by others equally acceptable to you in character and amount, during the month of February, or if not, that you shall be paid, on or before March 1, 1883, such proportion of our company's debt, or any extension thereof made in the meantime, in cash, as said farmers' notes are held to secure.

"For the faithful performance of these conditions we hereby bind ourselves to and with you, as the cashier of said bank."

Thereupon, in consideration of the delivery of said paper to said bank, and of the undertaking of the signers thereof therein expressed, the bank delivered to C. W. Marsh, president of the company, for the company, said nine packages of farmers' notes, and said Marsh receipted for the same, in the name of the company. The notes were sent to a bank at Lincoln, Nebraska, for collection, and were paid, and the money received by the manufacturing company. No dividends were declared by the company to its stockholders after said 10th day of August, 1882, nor did Waterman, or any of the signers of the writing, receive any money from it after that date. Said collaterals, the farmers' notes mentioned, were not replaced by others during the month of February, 1883, as contemplated and provided in and by said contract, nor were they at any time either returned or replaced by others. The bank was not paid its said indebtedness referred to in said contract, on or before March 1, 1883, as therein provided, nor has it ever been paid said indebtedness in full.

James S. Waterman, one of the signers of the agreement of August 10, 1882, died testate on the 19th day of July, 1883. Said indebtedness of the harvester manufacturing company to the bank was extended from time to time, upon the application of the company, until the 30th day of June, 1884. Four of the renewals of said indebtedness were made prior to July 19, 1883, and three thereafter. At the several times when such extensions were made, the old notes of the Sycamore Marsh Harvester Manufacturing Company were surrendered, and new notes were executed by said company for the indebtedness.

On the 30th day of June, 1884, the Home National Bank recovered judgment, in the Superior Court of Cook county, against said Sycamore Marsh Harvester Manufacturing Company, for the sum of $15,925.49, that being the amount of said indebtedness then remaining unpaid, and said judgment has never been paid or satisfied.

On the first day of July, 1884, the Home National Bank filed a claim in the county court of DeKalb county, against the estate of said James S. Waterman, for the sum of $15,-932.99, based upon the aforesaid agreement dated August 10, 1882. The claim was then determined adversely to the bank, and upon an appeal to the circuit court the venue was changed to Kane county. A trial in the circuit court of Kane county resulted in a judgment in favor of the executors of Waterman, and that judgment was affirmed in the Appellate Court for the Second District. A further appeal brought the record here.

Mr. CHARLES D. F. SMITH, and Mr. WILLIAM BROWN, for the appellant:

The contract in question is an original and not a collateral one. It is not a mere guaranty of the debt of another. Chitty on Contracts, (10th Am. ed.) 546, 557; *Blank* v. *Dreher*, 25 Ill. 331; 12 S. & M. 595; 2 Parsons on Contracts, sec. 3;

*Smith* v. *Finch,* 2 Scam. 321; *Nelson* v. *Boynton,* 3 Metc. 96; *Curtis* v. *Brown,* 5 Cush. 491; *Borchsenius* v. *Canutson,* 100 Ill. 82; *Allen* v. *Thompson,* 10 N. H. 32; *Power* v. *Rankin,* 114 Ill. 52.

A surety who is fully indemnified is not released by an extension of the time of payment. Brandt on Surety, sec. 302; *Chilton* v. *Robbins,* 4 Ala. 223; *Smith* v. *Steel,* 25 Vt. 427; *Moon* v. *Payne,* 12 Wend. 123.

· A promise by a member of a corporation to pay the debt of the latter is within the Statute of Frauds. *Tarbell* v. *Stevens,* 7 Iowa, 163.

When the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the newly contracting parties, the subsisting liability of the original debtor is no objection to a recovery. *Prime* v. *Koehler,* 77 N. Y. 91; *Farley.* v. *Cleveland,* 4 Cow. 432; *Clifford* v. *Luhring,* 69 Ill. 401; *Nelson* v. *Boynton,* 3 Metc. 400; 2 Parsons on Contracts, 306; *Emerson* v. *Slater,* 22 How. 18.

Messrs. CARNES & DENTON, and Messrs. WILSON & MOORE, for the appellees:

As to what constitutes a guaranty, see *Howe* v. *Nichols,* 22 Me. 176; *Craft* v. *Isham,* 13 Conn. 28; *Mussey* v. *Rayner,* 22 Pick. 223; *Taylor* v. *Wetmore,* 10 Ohio, 400; *Bell* v. *Kellar,* 13 B. Mon. 381; *Hull* v. *Colvin,* 4 How. (Miss.) 231.

A corporation is, in law, a different person from any of its members. *Hansen* v. *Donkersley,* 37 Mich. 134; *Wilters* v. *Sowles,* 32 Fed. Rep. 767.

As to release by extension of time of payment, see *Gay* v. *Blanchard,* 32 La. Ann. 503; *Walton* v. *Beauregard,* 3 Rob. 299; *Dodgson* v. *Henderson,* 113 Ill. 360; *Allen* v. *Thompson,* 10 N. H. 32; Baylies on Sureties, 74.

Mr. JUSTICE BAKER delivered the opinion of the Court:

One principal contention of appellant is, that the agreement dated August 10, 1882, became and constituted an original and direct engagement or undertaking by Waterman and his associates signing such paper, as distinguished from a guaranty or collateral engagement to an owner for the debt of another. We will assume the correctness of this claim of appellant; but we do not understand such concession to be decisive of the case.

It is evident that the agreement was not intended or understood to work a cancellation or discontinuance of the indebtedness of the Sycamore Marsh Harvester Manufacturing Company to the bank, and that it in fact had no such effect. It makes reference to the payment, on or before March 1 after its date, of the "company's debt," and makes express provision for "any extension thereof made in the meantime," thus indicating that it was contemplated that the debt of the company to the bank should continue to exist, notwithstanding the proposed arrangement should be entered into. The notes executed by the harvester company which the bank held for its debt were not surrendered or cancelled, nor was any credit placed thereon at the time the agreement was made, but said notes were retained by the bank, and were from time to time, for a period of nearly two years, replaced by renewal notes executed by the company, thus indicating that the company was, notwithstanding the agreement of August 10, 1882, regarded and treated as a debtor of the bank for the full amount of its original indebtedness remaining unpaid.

Assuming the transaction of August 10, 1882, to have been a direct and original promise by Waterman and his associates to pay the debt, yet it does not follow that the makers of that promise were not securities for the harvester company, and were not released by the subsequent extensions of time given to that company. It is manifest that, notwithstanding that

promise, the debt, as between the company and the signers of the writing, continued to be the debt of the company, and that had such signers paid the debt to the bank, they would have had recourse for the amount so paid, upon the company. A corporation and its stockholders are not one and the same. In *Hansen* v. *Donkersley*, 37 Mich. 134, it was said: "A corporation is, in law, a different person from any of its members. A promise by a stockholder to pay a corporation debt is in every sense a promise to pay the debt of another." (See, also, Browne on the Statute of Frauds, sec. 164.) It is also plain that the bank had full notice and knowledge of the relation which existed between said signers and the company, and that the company was the ultimate debtor.

Even if we assume, for the purposes of the decision, that the agreement contemplated renewals of the notes of the harvester company, and extensions of the time for the payment of the same, and that the necessity of procuring further consent of Waterman for the making of such renewals and extensions was thereby obviated, yet it is manifest that his death revoked all authority given by him in that behalf,—and the record shows that several renewals of the notes were made after his decease.

The rule is too well settled to require the citation of authorities, that if a creditor, by a valid and binding agreement, without the assent of a surety, gives further time for payment to the principal debtor, the surety will be discharged. We understand the doctrine to be, that where two persons are bound for the same debt, and there is an obligation on the part of one to exonerate the other, in the event of payment being enforced against such other, and this is known to the creditor, then the creditor can not extend the time of payment to the party ultimately liable without discharging the other debtor, even though such other debtor occupies the position of a principal debtor to the creditor. *Millard* v. *Thorn*, 56 N. Y. 402; *Colgrove* v. *Tollman*, 67 id. 95; *Walton* v. *Beau-*

*regard,* 1 Rob. 301; *Gray* v. *Blanchard,* 32 La. Ann. 503; 1 Jones on Mortgages, (2d ed.) secs. 741, 742.

It is also claimed that Waterman and his associates were indemnified, and therefore can not avail themselves of an extension of time for payment given to the corporation. The doctrine of *Smith* v. *Steel,* 25 Vt. 427, and other cases cited by appellant in that behalf, is, that a surety who is fully secured by property in his hands, is estopped from objecting to any enlargement of the time of payment made by agreement between the creditor and the principal, and is not discharged by such enlargement. But we do not understand that the signers of the agreement of August 10, 1882, either were or are indemnified against loss in respect to either all or any portion of the present claim of appellant. The $21,116.71 in farmers' notes were delivered to the corporation, and used by it for corporate purposes, and said signers received no benefit therefrom, except such as they may have received indirectly, as stockholders. In June, 1884, harvesters and binders of the estimated value of $10,650, in the hands of agents in Dakota and Nebraska, were transferred by the harvester company to the bank, for the purpose of securing said signers, and a bill of sale therefor was delivered to the bank, and in the same month the harvester company transferred and delivered to the bank four packages of farmers' notes, amounting in the aggregate to $10,450.08. Afterwards, under an arrangement concurred in by the bank and said signers, the harvesters and binders were disposed of, and the proceeds realized therefrom paid to the bank, and credited upon the indebtedness of the harvester company to it. The four packages of notes seem to have consisted, at least in part, of overdue paper, and the notes, by similar agreement between the bank and the signers of the agreement of August 10, 1882, were sent by the bank to the Capital National Bank of Lincoln for collection, and the collections made on said notes were remitted to appellant, and applied by it on the indebtedness

due to it from the harvester company. It also appears that the harvester company was indebted to one C. W. Moshier, of Lincoln, Nebraska, in the sum of about $57,000, for advances made on some $200,000 of over-due farmers' notes, which said Moshier held and upon which he had a lien, and that in the summer of 1884 a contract was made, whereby said Moshier agreed, that after the payment of said $57,000, with interest, and all expenses of collection, he would apply the proceeds of said notes, first to the payment of $26,000 to one John W. Ela, and after payment of said $26,000 to Ela, to the payment to Charles Kellum of not exceeding $10,000, to be applied on the debt of the harvester company to appellant, for the benefit of Kellum and his associates in the agreement of August 10, 1882, etc. The evidence tends to show that said Moshier has as yet been unable to collect upon said notes sufficient to pay the amount of his prior lien thereon, and probably never will be.

The trial court properly held, in the propositions of law submitted to it, that the burden rested upon appellant to show that the estate of Waterman was actually indemnified in respect to all or a portion of the indebtedness of the harvester company charged against said estate. The court must necessarily have found, as matter of fact, that the evidence failed to show that the provision made for that purpose had actual value, and that finding having been affirmed in the Appellate Court, is conclusive.

The rulings of the court upon the several written propositions of law submitted to it at the trial, were in substantial conformity with the views herein expressed.

We find no error in the record. The judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting.