(No. 22467.—

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant, *vs.* ARTHUR S. BASS *et al.* Appellees.

*Opinion filed June 20, 1934.*

HERRICK, J., took no part.

GEORGE E. DRACH, for appellant.

REARICK & REARICK, for appellees.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

On December 10, 1921, Arthur S. Bass and wife, Jennie E. Bass, delivered to the Prudential Insurance Company of America a promissory note for $22,000 and secured it by executing a real estate mortgage on certain lands in Pike county. The note was due five years after date, with six per cent interest per annum, payable semi-annually, with the privilege of paying multiples of $100, but not exceeding one-fifth of the principal during any one year, at any interest-paying date. Bass and wife conveyed the premises by warranty deed to Harry E. Buckles and C. R. Hawkins on October 26, 1924. The deed recited that the grantees assumed and agreed to pay said note and interest from March 1, 1924, as part of the purchase price. The grantees went into possession of the premises and the mortgagors made no further payments on the debt or of taxes and assessments on the premises. When the note became due it was not paid, but on December 29, 1926, the grantees, with their wives joining, entered into an extension agree-

ment with the insurance company whereby Buckles and Hawkins agreed to pay the principal on December 10, 1931. Interest was reduced to five per cent per annum and privilege was given to pay any multiple of $100 on the principal at any interest-paying date. It was expressly provided that the note and mortgage were to remain in force except as so modified. Appellees never consented, expressly or otherwise, to the extension agreement and had no knowledge of it until December 30, 1931. The owners of the land defaulted in the payment of a portion of the interest due June 30, 1931, and of all the interest due December 30, 1931. The insurance company was required to make advances for certain taxes, drainage assessments and insurance premiums during those years and had not been reimbursed for its outlay. Proceedings for foreclosure were instituted by the company in the circuit court of Pike county and the original mortgagors and their grantees were made parties defendant. The bill of complaint prayed for a personal decree against each of them. The chancellor found that appellees were released from personal liability because the extension agreement was made without their knowledge or consent. A decree of foreclosure was entered which exonerated appellees from personal liability. The Appellate Court for the Third District affirmed the decree, and the cause is here through a certificate of importance and appeal to this court.

The only question presented is whether or not the extension agreement had the legal effect of discharging appellees from personal liability for the debt. It is the position of appellant that when a mortgagor conveys the mortgaged premises to a grantee who assumes and agrees to pay the debt the grantee becomes the principal and the mortgagor becomes a surety, but the mortgagee is not bound to the relationship unless he agrees to it, either expressly or by tacit consent. Such is the law, but where the mortgagee knows of the relationship which has thus arisen between

the other parties he is bound to respect it and do nothing to disturb the legal obligations which are the result of it. If he chooses he may look only to the mortgagor for payment, or he may look only to the purchaser, or he may look to both. Furthermore, he may release the surety in that relationship either by agreement or by doing some act which has the legal effect of discharging the surety. In such event he can look only to the principal (the grantee) for the payment of the obligation.

In Pomeroy's Equity Jurisprudence (4th ed. vol. 3, sec. 1206,) the rule in such a case as this is stated as follows: "When a grantee thus assumes payment of the mortgage debt as a part of the purchase price, the land in his hands is not only made the primary fund for payment of the debt but he himself becomes personally liable therefor to the mortgagee or other holder of the mortgage. The assumption produces its most important effect by the operation of equitable principles upon the relations subsisting between the mortgagor, the grantee and the mortgagee. As between the mortgagor and the grantee, the grantee becomes the principal debtor, primarily liable for the debt, and the mortgagor becomes the surety, with all the consequences flowing from the relation of suretyship. As between these two and the mortgagee, although he may treat them both as debtors and may enforce the liability against either, still, after receiving notice of the assumption, he is bound to recognize the condition of suretyship and to respect the rights of the surety in all his subsequent dealings with them. * * * While the mortgagee may release the mortgage without discharging the grantee, his release of the grantee, or his valid extension of the time of payment to the grantee without the mortgagor's consent, would operate to discharge the mortgagor."

This rule is well established. While the courts of a few jurisdictions have held contrary views, a large majority of them have adopted the principles announced in

the foregoing rule. The reason for the rule is, that the mortgagor on paying the mortgage debt has a right of subrogation, but by such subrogation he acquires only such rights as the creditor himself actually has. Where the creditor extends the time of payment, the surety, on paying the debt, cannot sue the principal debtor until the extended period has expired. Without such extension he had the right to sue the principal debtor at any time after maturity of the debt. When he is deprived of this right by a contract of the mortgagee with the principal debtor extending the time of payment without his consent the law releases him from liability. *Asbell* v. *Marshall Building Ass'n,* 156 Md. 106, 143 Atl. 715; *Union Mutual Life Ins. Co.* v. *Hanford,* 143 U. S. 187, 36 L. ed. 118.

The testimony shows, without contradiction, that interest was paid up to June 10, 1931, and that the payments were not made by appellees. It also shows that the insurance company has a record which would disclose by whom they were made. The testimony does not affirmatively show who paid the interest, but the facts were within the company's knowledge. The failure of a party to a suit to produce evidence available to him gives rise to a presumption against him. (*Pipal* v. *Grand Trunk Western Railway Co.* 341 Ill. 320; *Mantonya* v. *Reilly,* 184 id. 183; Jones on Evidence, (3d ed.) sec. 19.) The presumption therefore is that such payments were made by the grantees and that appellant knew they had assumed the obligation. However, it is not necessary to resort to a presumption. When negotiations began for an extension of time the company became fully informed, and knew before it executed the agreement, that the grantees would become the principal obligors and appellees the sureties for them. That recognition of the purchasers' liability was an acknowledgment of the relationship between the vendors and vendees as it really existed, namely, that the latter were principals and the former were sureties for the payment of the debt.

*Union Store and Machine Works* v. *Caswell,* 48 Kan. 689,
29 Pac. 1072; *Nelson* v. *Brown,* 140 Mo. 580, 41 S. W.
960.

It is argued that the grantees agreed to pay the mort-
gage debt at maturity and when and as the debt might be
extended, and that therefore appellees anticipated an ex-
tension and impliedly assented thereto. The difficulty with
this contention is that it is based upon a premise not shown
by the record. The grantees agreed to pay the debt at
maturity, but it nowhere appears that they agreed to pay
it as it might be extended or that prior to maturity they
even anticipated there would be any extension. Appellant
relies upon *Fish* v. *Glover,* 154 Ill. 86. In that case there
was no extension agreement with the mortgagor's grantee.
We held that the mortgagor might pay the debt and be
subrogated to the rights of the mortgagee. In the case
at bar, shortly after maturity of the note appellant agreed
to the extension and thereby deprived appellees of the right
to become subrogated by payment upon any other terms
than those of the extension agreement. That action of
appellant brings the case squarely within the reason for the
rule releasing a surety in such case.

It is next contended that to release makers of a nego-
tiable note secured by mortgage because of an extension
of time to the mortgagor's grantee is contrary to the pro-
visions of the Uniform Negotiable Instruments act. Sec-
tion 118 of the act as adopted in this State, provides for
the discharge of a negotiable instrument by payment, can-
cellation by the holder, or when the principal debtor be-
comes the holder in his own right. That section deals
exclusively with the manner of discharging a negotiable
instrument and nowhere provides for a discharge of the
parties. Section 119 provides for the discharge of persons
secondarily liable, but the act makes no provision for the
discharge of anyone primarily liable on an instrument other
than such as may result from the discharge of the instru-

ment itself as provided in section 118. Section 195 of the act provides: "In any case not provided for in this act, the rules of the law merchant shall govern." There is no specific provision in the statute dealing with the precise question here presented, therefore section 195 applies and we are remitted to its provisions. In other words, the case is governed by the law as it existed before the passage of the Negotiable Instruments act. *Isaac* v. *VanHoose*, 171 La. 676, 131 So. 845; *Jefferson County Bank* v. *Erickson*, 188 Minn. 345, 247 N. W. 245.

The Appellate Court was correct in affirming the decree of the circuit court which exonerated appellees from personal liability, and its judgment is affirmed.

*Judgment affirmed.*

Mr. Justice Herrick took no part in this decision.