**Michele Trento, Appellant, v. Achille DeBenedetti, Appellee.**

**Gen. No. 38,136.**

Opinion filed December 30, 1935,

EARL J. WALKER, of Chicago, for appellant.

MAURICE R. MARCHELLO, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff brought an action in contract in the municipal court and filed his statement of claim alleging in substance that he had in 1925 opened a savings account in the Roseland State Savings Bank, and on August 25, 1930, had on deposit therein the sum of $2,007.27; that defendant, engaged in operating a grocery and market in Roseland also maintained an account in the bank, as did many of his customers in the neighborhood, and that he had frequent and numerous financial transactions with the bank, all of which made it especially desirable for defendant to have the bank remain open and solvent; that on or about August 25, 1930, the bank was reputed to be in doubtful financial circumstances and numerous depositors were withdrawing their accounts; that plaintiff, knowing these facts, had also gone to the bank and was standing at the paying teller's window with his pass book and other necessary credentials ready to withdraw all his money then on deposit, when defendant approached him and requested plaintiff not to withdraw his deposit, assuring him that the bank was sound and solvent and stating that if it were to close he, defendant, would suffer great financial loss and damage to his business, and "did then orally promise plaintiff that if he would in the future leave his funds remain on deposit in said bank, except casual withdrawals that he, said defendant, would individually pay the plaintiff any and all sums standing to his credit in case and when said bank failed or was closed''; that in consideration of the aforesaid promise of defendant plaintiff retained a large deposit in the bank until it failed July 6, 1931,

when there remained a balance of $1,249.83; that he has sustained damages to the extent of $800, for which suit was instituted.

Defendant moved to strike plaintiff's statement of claim, and the motion having been sustained by the court, plaintiff elected to stand by the statement of claim. Thereupon the court sustained the further motion of defendant to dismiss the suit for want of a sufficient statement of claim and entered judgment for defendant, from which plaintiff appeals.

The question presented for consideration is whether plaintiff's statement of claim sets forth a good and ·sufficient cause of action. The promise being oral, plaintiff seeks to avoid the operation of the statute of frauds (Ill. State Bar Stats. 1935, ch. 59), on which defendant relies, by urging that the averments of his statement of claim show that defendant had a financial interest in keeping the bank open, not only by reason of his own deposits therein but also because of losses that would have resulted from the calling of his customers' loans and their consequent inability to pay their. accounts with defendant in the event of the bank's insolvency, and it is urged that because of these specific beneficial considerations the alleged oral promise became an original undertaking whereby plaintiff relied solely on defendant's promise and not on the bank's obligation.

To sustain this theory of recovery plaintiff cites and relies on several cases wherein defendant, who was in some way personally benefited by the undertaking, orally promised to pay the debts of a third person in consideration of the forbearance of some right possessed by plaintiff. *Garren v. Youngblood,* 207 N. C. 86, 176 S. E. 252, is one of these. In that case one of the bank's depositors was dissuaded from withdrawing her money by the assurances of defendant, also a depositor and one of the stockholders of the bank, that

the bank was solvent and his assertion that if she would allow her funds to remain on deposit defendant would see that she suffered no loss. Upon the failure of the bank a month later plaintiff sued defendant, who relied on the statute of frauds. The court held the promise to be an "original one, and upon sufficient consideration." Defendant, being a stockholder of the bank, was confronted by possible liability in the event of the bank's insolvency, and this fact evidently led the court to the conclusion that the "real character of a promise does not depend altogether upon the form of expression, but largely upon the situation of the parties and whether they understood it to be a collateral or a direct promise."

In *Lusk v. Throop*, 189 Ill. 127, D. D. Streeter & Co. were constructing a railroad in McHenry county. A portion of the work was sublet by them to Carlson and Olson. Throop and Pinnow were at that time merchants in the village of Nunda, conducting a general store. The subcontractors, Carlson and Olson, applied to Throop for supplies for themselves and their employees while carrying on the construction project. After Carlson and Olson had asked Throop for credit Throop had a conversation with Frank S. Lusk, junior member of D. D. Streeter & Co., the principal contractors, about extending credit to Carlson and Olson. After the conversation Throop proceeded to furnish and deliver the supplies requested. It was charged in the suit instituted by Throop against Lusk that Lusk's promise to pay for any supplies that might thereafter be delivered to Carlson and Olson was an original undertaking and not collateral, and that Lusk was liable thereon. The statute of frauds was interposed as a defense. It was held that where goods are furnished to a third person at the request and upon the credit of the promisor the undertaking is an original one and the statute of frauds does not apply. In that

case, however, credit was given to the third person at the request of the promisor, and therefore the court had no alternative but to hold that the promise was an original one. Moreover, there was no debt existing at the time of the oral promise, which evidently affords a distinction from the instant case, as indicated by the court's opinion, in which it is stated that "if, for example, appellees had already delivered the supplies to Carlson and Olson, and after such delivery, appellants had promised to pay for the same, then the promise would be to pay an existing debt due from a third person, and, hence would come within the meaning of the statute."

*Beltine Chemical & Mfg. Co. v. Zulfer,* 152 Ill. App. 308, is cited also. In that case plaintiff, who sold laundry machinery, had an overdue account of $741.10 against the Mattman Laundry Co., which it was endeavoring to collect. Defendant, Zulfer, was then president of the laundry company and held a chattel mortgage upon its personal property securing the payment of an indebtedness of some $7,000 owed by the company to him. One Esden, manager of the plaintiff company, called on Zulfer and told him that if the account were not paid suit would be brought against the laundry company. Zulfer replied, "If you do that I shall have to foreclose my mortgage and you will be wiped out and you will get nothing. Now, I will take that account up and pay it myself, at the rate of $100 per month." After the lapse of some two weeks Esden again saw Zulfer and told him that plaintiff would accept the proposition, whereupon Zulfer wrote a check for $100 on account, making it payable to the Mattman Laundry Co. Three subsequent payments of $100 each were made by Zulfer's personal checks, payable directly to plaintiff, and thereafter no further payments were made. After a rather exhaustive review of the cases in this State, the court concluded that the verbal

promise to pay the existing debt of another is not within the statute of frauds if there is a new consideration to support the promise, such as the forebearance to bring suit when the right to sue existed.

Defendant cites *Home Nat. Bank of Chicago v. Waterman,* 134 Ill. 461, wherein the subject of an original and collateral undertaking is discussed upon the following facts: Sycamore Marsh Harvester Mfg. Co. was indebted to the Home National Bank of Chicago for $20,000, evidenced by two promissory notes of $10,000 each. As collateral to the debt the bank held various farmers' notes originally taken by the manufacturing company for goods sold to farmers. Various individuals as stockholders of the manufacturing company, owning a large majority of its stock, executed and delivered to the bank their written agreement guaranteeing the bank that if it delivered to the president of the manufacturing company the notes held as collateral for the purpose of collection that the securities would be replaced by others equally acceptable to the bank, similar in character and in amount, or in the alternative that they would pay the company's debt or any extension thereof which the notes were held to secure. The bank delivered the notes to the president of the manufacturing company. The farmers' notes were not replaced by others, as contemplated by the agreement, nor was the bank paid the indebtedness referred to in the contract. The bank subsequently recovered judgment against the manufacturing company for the unpaid balance due on the notes, which was never satisfied, and thereafter filed a claim against the estate of James S. Waterman, who in his lifetime was one of the stockholders signing the agreement. Judgment was entered in favor of the executors of the estate, which was affirmed in the Appellate Court for the Second District and then taken to the Supreme Court, which held that the agreement was

not intended or understood to work a cancellation or discontinuance of the indebtedness of the manufacturing company to the bank, and, in fact, had no such effect. The court pointed out that the notes executed by the manufacturing company, which the bank held as collateral for its debt, were not surrendered or canceled nor was any credit placed thereon at the time the agreement was made, but were retained by the bank and were from time to time for a period of nearly two years replaced by renewal notes executed by the manufacturing company, thus indicating that the company was, notwithstanding the agreement of the stockholders, regarded and treated as a debtor of the bank for the full amount of its original indebtedness remaining unpaid.

In *Brown v. Reinberger,* 177 Ill. App. 297, also cited by defendant, plaintiff recovered a judgment against defendant for $444.65, the balance due for goods shipped to Illinois Garter Co. Prior to contracting for the goods, defendant, who was one of the officers and principal stockholders of the company, had a conversation with plaintiff in New York relative to extending the company further credit. There was evidence to the effect that Reinberger told Brown, the plaintiff, that if he would ship the goods ''I will see that you are paid in any event for any goods that you may send, and I am worth $5,000.'' There was also other evidence bearing upon the subject, which for the purposes of this opinion it is unnecessary to relate. The Appellate Court reversed judgment entered by the trial court with a finding of fact, and held that:

''If the promise referred to an existing account it was unquestionably one to pay the debt of another—that of a stockholder to pay the debt of his corporation, and, therefore, a collateral one. *Home Nat. Bank of Chicago v. Waterman's Estate,* 134 Ill. 461.

''The claim that the promise was original is not only inconsistent with the facts aforesaid, but with the fact

that the credit was given to the corporation and not to defendant, which strongly tends to show that the promise was collateral. *Lusk v. Throop,* 189 Ill. 127. In determining whether a promise is original or collateral, the test is whether credit is given to the persons sought to be charged or to someone else. *Lusk v. Throop, supra; Geary v. O'Neil,* 73 Ill. 593. We think there can be no doubt that the promise was collateral and was a guaranty of the debt subsisting January 20th, which was paid and that defendant was not personally liable for subsequent accounts.''

While it is true that defendant evidently desired to serve his own interest in persuading plaintiff to allow his money to remain on deposit, nevertheless we believe that the promise was collateral and was a guarantee of the subsisting debt which was never canceled and which plaintiff continued to treat as a primary obligation by withdrawing large sums from the account for approximately 11 months after the promise is alleged to have been made. It was held in the early case of *Hite v. Wells,* 17 Ill. 88, that the statute of frauds cannot be avoided by the mere show or form of an independent agreement. ''It is the substance and force of the contract to which the courts will look in determining whether the contract is an original one, or incidental and collateral to the debt or liability of another.'' Under all the circumstances of this case we think that plaintiff allowed his money to remain in the bank by reason of defendant's assurance that the bank was solvent and his guarantee to make good any loss sustained in the event of the bank's insolvency. Such an agreement comes within the statute. Accordingly, the judgment of the municipal court is affirmed.

*Affirmed.*

SCANLAN, P. J., and SULLIVAN, J., concur.