(No. 26191.—

NELLIE M. CONERTY, Appellee, *vs.* RICHARD J. RICHTSTEIG *et al.* Appellants.

*Opinion filed March 16, 1942—Rehearing denied May 12, 1942.*

WOLFF, KEANE, O'LEARY & GOMBERG, (OSCAR M. WOLFF, and ALBERT A. GOMBERG, of counsel,) for appellants.

RYAN, CONDON & LIVINGSTON, (DAVID J. GREENBERG, JOHN J. ELWARD, and ROBERT I. LIVINGSTON, of counsel,) for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

Nellie M. Conerty brought suit in the circuit court of Cook county to foreclose a trust deed executed by Richard J. Richtsteig and Marie Richtsteig, his wife. The trust deed was foreclosed and a deficiency judgment for $5442.42 was rendered against the Richtsteigs and others. The Richtsteigs appealed to the Appellate Court for the First District which affirmed the decree and we have granted leave to appeal.

The undisputed facts are that on July 1, 1920, Richard J. Richtsteig purchased the property located at the northeast corner of Congress and Sangamon streets, Chicago, for $15,000. As part of the purchase price he and his wife executed their joint promissory note for $9000, dated July 1, 1920, due July 1, 1925, with interest until maturity at six per cent per annum, and after maturity, at seven per

cent. To secure payment of this note the Richtsteigs executed a trust deed on the property which contained, *inter alia,* the following provision: "The grantors covenant and agree * * * to pay said indebtedness and the interest thereon, as herein and in said notes provided, or according to any agreement extending time of payment." On February 6, 1923, the Richtsteigs sold the mortgaged property to Hecht Nielsen for $18,000. Nielsen assumed the first mortgage of $9000, gave the Richtsteigs $5300 in cash and a second mortgage for $3700. The interest on the note was paid until maturity July 1, 1925. A few days before the maturity of the note, the agent for the owner of the note and Nielsen and his wife executed an agreement whereby payment of the principal debt was extended for five years, or until July 1, 1930, and the rate of interest was increased to six and one-half per cent. At the time of this extension the mortgaged property was reasonably worth from $18,000 to $20,000. In 1930, the note was extended until July 1, 1935. The interest on the mortgage debt was paid by Nielsen until July 1, 1936. Upon default in payment, the holder of the note, Nellie M. Conerty, filed this foreclosure suit September 4, 1936. The Richtsteigs did not have personal knowledge of either of the above extensions, and had no connection with the property or the loan from the date they sold the property to Nielsen in 1923, until they were served with summons in the foreclosure suit on September 11, 1936. As stated above, the trust deed was foreclosed, the property sold, and a deficiency judgment of $5442.42 was rendered against the Richtsteigs.

The appellants contend that the Statute of Limitations has run as to them; that the holder of the note was guilty of *laches;* that the provision in the trust deed quoted above did not authorize an extension of the time of payment without their consent and that the extensions made to Nielsen did not prevent the Statute of Limitations from running as to them.

The decision of these questions depends upon the effect to be given to the provision in the mortgage, above quoted, on the liability of appellants. The note was executed and delivered on July 1, 1920. It was due on its face July 1, 1925. Nielsen assumed the payment of the mortgage debt by his acceptance of the deed to the property. This deed was dated February 6, 1923. It is conceded in the record that appellants did not make any payments on the note after that date. This suit was brought on September 4, 1936. A cause of action on the note against appellants was therefore barred at the time the suit was brought unless the extension agreements entered into between the holder of the note and Nielsen were binding on appellants.

After the date of the deed to Nielsen and with knowledge of the fact that he had purchased the property and assumed the debt, the holder of the note accepted and treated Nielsen as the principal debtor and dealt with him as such. In this situation, the relation of the parties to the indebtedness was definitely changed. As a result of this transaction, Nielsen became the principal debtor and appellants sureties. The relation of appellants to the debt was thereafter solely that of suretyship with all its incidents and limitations. This rule is well established by the decisions of this court. In the case of *Prudential Insurance Co.* v. *Bass,* 357 Ill. 72, this court, quoting from Pomeroy's Equity Jurisprudence, (4th ed. vol. 3, sec. 1206,) said, "When a grantee thus assumes payment of the mortgage debt as a part of the purchase price, the land in his hands is not only made the primary fund for payment of the debt but he himself becomes personally liable therefor to the mortgagee or other holder of the mortgage. The assumption produces its most important effect by the operation of equitable principles upon the relations subsisting between the mortgagor, the grantee and the mortgagee. As between the mortgagor and the grantee, the grantee becomes the principal debtor, primarily liable for the debt, and the mortgagor becomes the surety, with all the consequences flow-

ing from the relation of suretyship. As between these two and the mortgagee, although he may treat them both as debtors and may enforce the liability against either, still, after receiving notice of the assumption, he is bound to recognize the condition of suretyship and to respect the rights of the surety in all his subsequent dealings with them. * * * While the mortgagee may release the mortgage without discharging the grantee, his release of the grantee, or his valid extension of the time of payment to the grantee without the mortgagor's consent, would operate to discharge the mortgagor." The court then continued:

"This rule is well established. While the courts of a few jurisdictions have held contrary views, a large majority of them have adopted the principles announced in the foregoing rule. The reason for the rule is, that the mortgagor on paying the mortgage debt has a right of subrogation, but by such subrogation he acquires only such rights as the creditor himself actually has. Where the creditor extends the time of payment, the surety, on paying the debt, cannot sue the principal debtor until the extended period has expired. Without such extension he had the right to sue the principal debtor at any time after maturity of the debt. When he is deprived of this right by a contract of the mortgagee with the principal debtor extending the time of payment without his consent the law releases him from liability. (*Asbell* v. *Marshall Building Ass'n,* 156 Md. 106, 143 Atl. 715; *Union Mutual Life Ins. Co.* v. *Hanford,* 143 U. S. 187, 36 L. ed. 118.)" The same rule was announced and followed in *Harts* v. *Emery,* 184 Ill. 560; *Dean* v. *Walker,* 107 id. 540, and *Flagg* v. *Geltmacher,* 98 id. 293.

Under the above rule there was a complete change of the relation of the parties to the contract of indebtedness as written in the note. (*Webster* v. *Fleming,* 178 Ill. 140; *Fish* v. *Glover,* 154 id. 86.) The grantee became personally liable as principal debtor. (*Ingram* v. *Ingram,* 172

Ill. 287.) His liability, as such, was absolute. That liability is based on the assumption agreement and not on the note. It does not depend upon the validity of the mortgage. (*Webster* v. *Fleming, supra.*) The mortgagor cannot thereafter make any contract with his grantee with reference to the indebtedness without the consent of the mortgagee. (*Bay* v. *Williams,* 112 Ill. 91.) The mortgagee cannot extend the time of payment to the grantee without thereby releasing the original maker. (*Fish* v. *Glover, supra; Home National Bank* v. *Estate of Waterman,* 134 Ill. 461.) Section 119 of the Negotiable Instruments act so provides. Ill. Rev. Stat. 1941, chap. 98, par. 141.

It is insisted by appellee that appellants, by the provision in the mortgage which recites that the mortgagors agree to pay the mortgage debt, "according to any agreement extending the time of payment," consented to any extension of the time of payment, although appellants were not parties to such extension agreement. This argument assumes that the note and mortgage constitute one instrument, and that any agreement relating to the indebtedness contained in the mortgage became a part of the note, although no such provision is found in the note itself. Here, there is no provision in the note making any of' the terms of the mortgage a part of the note. The better rule seems to be, that the note and mortgage are separate undertakings. The note relates to, and contains the contract of the maker to pay the debt and is wholly independent of the mortgage. The mortgage is not dependent upon the note executed by the mortgagors, for its validity. The note which is the evidence of the indebtedness may be made by third parties, or a mortgage may be valid where there is no note given. The mortgage relates only to the real estate pledged as security for the payment of the debt.

Counsel have cited no cases, and we have found none, which are exactly in point on the facts here involved.

There are many cases, however, which are in point in principle. It was held by this court in *Daub* v. *Englebach*, 109 Ill. 267, that even though the mortgage was void, still this would not affect the liability of the grantee of the premises, who assumed the debt and agreed to pay the same. This holding was cited and approved in *Webster* v. *Fleming, supra.* A provision in the mortgage for the payment of costs, taxes, assessments, insurance and attorney fees has been held not to add to or change the amount of the debt, as evidenced by the note. The liability of the maker of the note cannot be increased or changed by such provisions in the mortgage. (*Hunter* v. *Clarke*, 184 Ill. 158.) By the same principle and for the same reason, any other provisions in the mortgage, as to the indebtedness, or the time of the payment thereof, cannot alter, change or add to the provisions of the note, which is the contract by which the indebtedness is created. Any further or additional obligations in the mortgage, not contained in the note, relate solely to the security pledged and not to the obligation of the maker of the note, which is the only evidence of his liability.

A provision in the mortgage in the form of a consent to an extension of the time of payment is no different in its legal effect from an agreement in a mortgage for the acceleration of the time of payment of the indebtedness, for waste or other defaults under the mortgage. The former relates to a postponement of the due date, the latter to an option to shorten the period of the time for which the credit was extended.

It has been held by the courts of several States that a provision in a mortgage for an acceleration of maturity extends only to the right to foreclose the mortgage and subject the property pledged to the payment or reduction of the debt, and that the mortgage and note are separate contracts. The mortgage is applicable to the right to apply the security to the discharge of the debt and the note to the

liability of the maker for the payment of that indebtedness. *White* v. *Miller,* 52 Minn. 367, 54 N. W. 736, 19 L. R. A. 673; *Winne* v. *Lahart,* 155 id. 307, 193 N. W. 587, 34 L. R. A. 844; *Thorpe* v. *Mindeman,* 123 Wis. 149, 68 L. R. A. 146; *Baird* v. *Meyer,* 55 N. Dak. 930, 215 N. W. 542, 56 L. R. A. 175; *Owings* v. *McKenzie,* 133 Mo. 323, 40 L. R. A. 154; *Hall* v. *Jameson,* 151 Calif. 606, 91 Pac. 518, 12 L. R. A. (ns) 1190.

These cases hold that the acceleration of the time of payment when authorized in the mortgage does not accelerate the maturity date of the debt as provided in the note, or in any way affect the liability of the maker of the note, which constitutes the contract on which his personal liability is based. It is only by reason of our statute that his personal liability may be enforced in a suit to foreclose the mortgage. (Ill. Rev. Stat. 1941, chap. 95, par. 17.) Under this statute a deficiency judgment may be entered in a foreclosure suit only against one "personally liable for the mortgage debt." The power to enter a deficiency decree or deficiency judgment in a foreclosure suit is purely statutory. *Bouton* v. *Cameron,* 205 Ill. 50; *Cotes* v. *Bennett,* 183 id. 82.

Notwithstanding this statutory provision expressly authorizing the court to enter a deficiency judgment in a foreclosure suit, the rule is settled that if for any reason the holder of the mortgage cannot enforce his mortgage as against the property, the court has no power to enter a judgment in that suit on the personal liability for the payment of the debt. In *Bouton* v. *Cameron, supra,* it was said, "It is only by virtue of the statute that a money decree can be rendered by a court of equity in a foreclosure proceeding, and the statute provides only for a deficiency decree for the balance remaining due after a sale of the property has failed to produce the full amount found to be due. That a money decree can be rendered, in a foreclosure suit, for a deficiency only, has been decided by both

this court and the Appellate Court. In *Cotes* v. *Bennett,* 183 Ill. 82, it was declared (p. 85) : 'It is only in virtue of power conferred by the statute a money decree can be rendered by a court of chancery in a foreclosure proceeding against the mortgagor or other person liable for the mortgage debt.' "

The rule to be deduced from the above cases is, that the note and mortgage constitute separate contracts, and that any provision in the mortgage with reference to the time of payment of the debt, not found in the note itself, is no part of the note and does not affect the personal liability of the maker.

This rule finds support in principle in other decisions of this court. The case of *Oswianza* v. *Wengler & Mandell, Inc.,* 358 Ill. 302, involved the right of the holder of a part of the bonds secured by a mortgage, in the form of a trust deed, to maintain an action at law on the bonds. The mortgage was made to a trustee. In the mortgage it was provided, "Every holder of any of the bonds hereby secured (including pledgees) accepts the same subject to the express understanding and agreement that every right of action, whether at law or in equity, upon or under this indenture, is vested exclusively in the trustee, and under no circumstances shall the holder of any bond or coupon, or any number or combination of such holders, have any right to institute any action at law upon any bond or bonds or any coupon or coupons or otherwise." etc. The bonds referred to the mortgage and by such reference purported to make all provisions of the mortgage a part of each bond. This reference was in the following language: "Said trust deed and this bond, as well as all the other bonds aforesaid, are to be taken and considered together as parts of one and the same contract. * * * Both principal and interest bear interest after maturity thereof at the rate of seven per cent (7%) per annum and are payable in the manner described in the trust deed. * * * For a description of

the mortgaged property and the nature and extent of the security reference is made to said trust deed, to all of the provisions of which this bond and each coupon hereto attached are subject, with the same effect as if said trust deed were herein fully set forth." The sole question there involved was whether the owner of some of the bonds was barred by this "non-action clause" in the mortgage from maintaining a suit on his bonds. In disposing of this question it was said, "The note or bond is a distinct promise to pay money. The pledge of real estate to secure that promise is a different and distinct agreement, which ordinarily in nowise affects the promise to pay but gives a further remedy for failure to carry out that promise. A holder of a note may discard the mortgage entirely and sue on his note." It was held that in order to make a provision in the mortgage a part of the bond or note, the bond must specifically refer to the particular clause in the mortgage and adopt the same as a part of the bond, by reference. No such situation here exists. The only reference to the mortgage in the note here involved is the general recital that "Payment of this note is secured by trust deed on real estate in Cook county, Illinois, to Edward D. LeTourneux." The personal liability of the maker of the note is founded only on the note.

The personal liability of the grantee who accepts a deed in which he assumes and agrees to pay the mortgage debt, is based on his assumption agreement. Such grantee is not liable on the note. It is not his contract. His liability rests entirely on his agreement by which he assumed and agreed to pay the debt. He cannot be sued on the note because it is not his obligation. His liability can only be established by showing the making of the deed containing such agreement and his ratification and acceptance of the agreement by accepting the deed. This constitutes his contract. While it is a new contract between the grantee and his grantor, it is a contract made for the benefit of the

holder of the indebtedness. To this contract the holder of the indebtedness may or may not become a party. It is entirely optional with him. (*Prudential Insurance Co.* v. *Bass, supra.*) The election of the holder of the indebtedness to accept the contract made for his benefit may be manifested, and is conclusively established, when he thereafter deals with such grantee as the principal debtor. When he accepts the benefit of the contract made for his benefit this operates as a change of the original contract evidenced by the note. Any extension of the time of payment by the holder of the indebtedness to the new debtor with knowledge that he has assumed the debt operates to discharge the original maker who has thereby become only a surety. *Prudential Insurance Co.* v. *Bass, supra; Home National Bank* v. *Waterman, supra; Dean* v. *Walker, supra.*

Under the above rules, and upon the undisputed facts in the record, the extension agreements were wholly ineffective as to appellants. They operated only to release appellants from liability to pay the indebtedness. Any cause of action against appellants for the recovery of the mortgage debt accrued on July 1, 1925. No payments having been made by them or by their authority on either the principal or interest, and there having been no extension which was effective as to them, no judgment could lawfully be entered against them under the pleadings and upon the facts in the record.

The circuit court erred in entering the decree for a deficiency judgment against appellants and the Appellate Court erred in affirming that decree. The decree of the circuit court and the judgment of the Appellate Court affirming that decree are reversed.

*Judgment and decree reversed.*