BANK USA, S.A., f/k/a United Savings Association, Plaintiff-Appellee, v. ANDREW L. SILL *et al.*, Defendants-Appellants.

Third District No. 3—90—0744

Opinion filed November 27, 1991.

HAASE, J., dissenting.

Greg G. Chickris, of East Moline, for appellants.

N.L. McGehee, of McGehee, Boling, Whitmire & Olson, Ltd., of Silvis, for appellee.

JUSTICE SLATER delivered the opinion of the court:

This is an appeal from the circuit court of Rock Island County wherein the trial court, by judgment dated September 24, 1990, entered a deficiency judgment in a foreclosure proceeding in favor of plaintiff and against defendants Andrew L. Sill and Jean E. Sill (the Sills).

The Sills purchased a home in the City of East Moline on July 26, 1983, and secured financing for the purchase from United Savings Association of Silvis, Illinois, plaintiff's predecessor in interest. The Sills executed a 30-year note and mortgage providing for a monthly payment of $214 with interest at 13.25%. The Sills desired to sell the home in 1986 to defendants Paul and Cindy Williams (the Williams). The Sills contacted Bill Grimes, plaintiff's loan officer, concerning an assumption of the mortgage by the Williams. Mr. Grimes consented to the sale but no written agreement was entered into between any of the parties at that time.

Subsequent to the completion of the sale, plaintiff and the Williams entered into a "Loan Modification Agreement," wherein the parties reduced the monthly payment and interest rate on the remaining unpaid balance of the Sills' loan, but maintained the same amortization period. The agreement further provided that the terms and conditions of the original note and mortgage were to remain in full force and effect. This document was executed without the Sills' knowledge.

In August of 1987, the Williams became delinquent in their payments to plaintiff prompting a notice of acceleration letter from plaintiff's attorneys to the Sills. In this letter plaintiff's attorneys acknowledged that the Williams "assumed and agreed to pay" the debt but nonetheless maintained the Sills were obligated to cure the default under the original note and mortgage. The default was thereafter cured by the Williams. In September of 1987, a second notice of acceleration letter was sent to the Sills indicating that the Sills were liable under the note and mortgage but referring to the loan modification agreement as an "Assumption Agreement." This default was not cured, and a foreclosure proceeding was commenced resulting in a deficiency judgment against the Sills for $9,982.60.

Two issues are raised on appeal: first, whether plaintiff's execution of the loan modification agreement released the Sills from liability under the original note and mortgage; and second, whether plaintiff's actions of altering the terms of the note and mortgage without notice to the Sills released the Sills from liability under the original note and mortgage.

Regarding the first issue, paragraph 17 of the mortgage reads, in part, as follows:

> "Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, *** Lender may, at

Lender's option declare all sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing to the effect that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and Note ***."

Clearly, plaintiff did not exercise its option to accelerate the note pursuant to the provisions of paragraph 17. The question then is whether the loan modification agreement was in effect an assumption agreement accepted by plaintiff thereby releasing the Sills from liability. The loan modification agreement specifically states that all conditions and terms of the original note and mortgage, not altered by the agreement, were to remain in full force and effect. With this in mind, it is not unreasonable for plaintiff to have entered into a loan modification agreement with the Williams so long as the Sills would still be ultimately responsible for any liability that might arise in the future due to any default under the note and mortgage.

Additionally, the Sills' argument that plaintiff must have believed the loan to have been assumed by the Williams through the use of the assumption language in deficiency notices is without merit. Even though this language was used, it is clear that plaintiff sent these notices to the Sills and unquestionably stated that the Sills were obligated to cure the default or be subject to foreclosure proceedings.

Finally, paragraph 10 of the mortgage states that "[e]xtension of the time for payment or modification of the sums secured by this mortgage granted by lender to any successor in interest of borrower shall not operate to release, in any manner, the liability of the original borrower." This clause further supports plaintiff's argument that the loan modification agreement was not an assumption of the debt, but merely a revision of the amortization of the loan which the Williams agreed to pay.

Secondly, the Sills argue that plaintiff, by entering into the loan modification agreement, materially altered the terms of the original note and mortgage. The changes complained of are a lowering of the interest rate by 2.5% and a lowering of the monthly payment by $34.40 per month. These changes were made without the Sills' knowledge or consent. As authority, the Sills cite *Prudential Insurance Co. of America v.*

*Bass* (1934), 357 Ill. 72, 191 N.E. 284, *Conerty v. Richtsteig* (1942), 379 Ill. 360, 41 N.E.2d 476, and *Prudential Savings & Loan Association v. Nadler* (1976), 37 Ill. App. 3d 168, 345 N.E.2d 782. These cases, however, are distinguishable because in each case, the mortgagee and the grantee of the original mortgage entered into agreements extending the payoff dates of the original notes to the detriment of the original mortgagors. In each respective case, the court reasoned that when the mortgagee accepted benefits from the grantee, the mortgagor became a surety of the underlying debt. Thereafter, when the debt was extended without the knowledge or consent of the surety, the surety no longer had the option of paying off the debt after the original maturity date and then seeking to recover the amount paid from the grantor. The surety instead had to wait until the extension period had expired. Because of this detriment to the surety, each court determined that the original mortgagor had been discharged as a surety of the debt. See *Bass*, 357 Ill. 72, 191 N.E. 284; *Conerty*, 379 Ill. 360, 41 N.E.2d 476; *Nadler*, 37 Ill. App. 3d 168, 345 N.E.2d 782.

In this case, the Sills may arguably be construed as sureties of the underlying debt, but no detriment to the Sills resulted from the subsequent execution of the loan modification agreement by plaintiff and the Williams. The payoff date of the loan remained the same. There is no evidence that the balance due at any given time would be greater under the modified amortization schedule than under the original amortization schedule. In fact, it appears that the modification agreement was a benefit to the Sills because in the event the Williams defaulted in paying the debt, interest did not accrue as rapidly on the debt as it would have under the original amortization schedule thereby decreasing the balance due.

We therefore affirm the trial court's order and judgment.

Affirmed.

GORMAN, J., concurs.

JUSTICE HAASE, dissenting:

I respectfully dissent from the opinion of the court in this case. This transaction was governed by paragraph 17 of the mortgage, which reads in part as follows:

> "Transfer of the property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, *** Lender may, at Lender's option, declare all sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such op-

tion to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing to the effect that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and Note ***."

The language of paragraph 17 of the mortgage deals with two topics. The first, under the heading "Transfer of the Property," is a due on sale clause. It gives the lender the right to declare all sums due and payable upon a transfer of the property. The next sentence of the paragraph provides for a waiver by the lender of the option to accelerate. Under that sentence, the waiver occurs if the lender and the buyer of the property reach agreement in writing that the credit of the buyer is satisfactory to the lender and that the interest payable on the sum secured shall be at such rate as lender shall request. That sentence states that such agreement is to occur prior to the sale or transfer.

The agreement did not occur prior to the sale in this case. Therefore, the waiver did not occur precisely in accordance with the terms of paragraph 17 of the mortgage. However, the parties agree in their briefs that the lender's action in continuing to accept payments and not accelerate the loan amounted to a waiver.

The second portion of paragraph 17 deals with assumption agreements. Under that language, it says that if the lender has waived the option to accelerate, and if borrower successor in interest has executed a written assumption agreement accepted in writing by lender, lender *shall* release borrower from all the obligations under this mortgage and note. In this case, a waiver did occur, albeit not precisely in accordance with paragraph 17. Subsequent to the completion of the sale, the plaintiff and the buyer entered into a "Loan Modification Agreement."

The issue presented in this case was whether that loan modification agreement constituted an assumption agreement accepted by plaintiff in writing thereby releasing the Sills from liability. The loan modification agreement which was entered into between plaintiff's predecessor, United Savings Association of Silvas, Illinois, and defendants' successors in interest, Paul and Cindy Williams, does several things. First, it recites the original obligation between Andrew Sill, Jean Rimkus, and United Savings Association in the amount of $19,000. It further recites that the parties (the Williams and United Savings Association) acknowledge mutual

considerations to revise the terms of payment of said indebtedness. The agreement further sets forth the unpaid balance of $18,818.83 and recites that the borrowers promise to pay the indebtedness with interest at the rate of 10.75% upon the unpaid balance. That interest rate was less than the original interest rate. In the final paragraph the agreement states that "In all other respects said note and mortgage contract shall remain in full force and effect, and the undersigned promise to pay said indebtedness as hereinstated and to perform all of the obligations of said mortgage contract, as herein revised."

The majority opinion in this case reasons that it was "not unreasonable for plaintiff to have entered into a loan modification agreement with the Williams so long as the Sills would still be ultimately responsible for any liability that might arise in the future due to any default under the note and mortgage." (221 Ill. App. 3d at 600.) I respectfully submit that the issue is not the reasonableness of the conduct of the bank, but rather whether under paragraph 17 of a mortgage document drafted by the bank and under a loan modification agreement drafted by the bank the legal effect of those documents is to release defendants Andrew and Jean Sill.

It has long been the law that when a document is prepared by one party and not by the other, any ambiguities should be resolved in favor of the party who did not draft the document. Also, it seems clear that what a party who drafts a document calls it is not determinative of the issue. What is important is the language in the body of the document taken together with all of the facts of the case. The fact that the bank chose to call the agreement a "Loan Modification Agreement" merely shows one of its purposes in drafting the agreement, *i.e.*, to reduce the interest rate and extend the time for payment which made the agreement more attractive to the new buyers. However, the bank was also obtaining the agreement of the Williams to pay the outstanding balance and comply with the rest of the terms of the original note and mortgage.

Black's Law Dictionary defines the legal term "ASSUMPTION" as:

"The act or agreement of assuming or taking upon one's self. The undertaking or adoption of a debt or obligation primarily resting upon another, as where the purchaser of real estate 'assumes' a mortgage resting upon it, in which case he adopts the mortgage debt as his own and becomes personally liable for its payment. The difference between the purchaser of land assuming a mortgage on it and simply buying subject to the mortgage, is that in the former case he makes himself personally liable for the payment of the mortgage debt, while in the latter case he does not. When he takes the conveyance subject to the mortgage, he is bound only to the

extent of the property. Where one 'assumes' a lease, he takes to himself the obligations, contracts, agreements, and benefits to which the other contracting party was entitled under the terms of the lease." Black's Law Dictionary 123 (6th ed. 1990).

In this case the new buyers promised to pay the balance of the sums owed on the original note and mortgage subject to the new interest rate and payment schedule and to perform all the obligations of the original mortgage contract. Very clearly they *assumed* the terms of the note and mortgage and are bound personally on the note and mortgage. The fact that the bank called the agreement a loan modification agreement is of no import.

It is also significant that the bank used the term "assumption" in deficiency notices that it sent. A review of the record in this case shows that the bank believed that this was an assumption situation although it is also clear that the bank was not intending to release the Sills because they continued to send the Sills notices.

Returning then to paragraph 17 of the mortgage, we have, by agreement of the parties, a waiver of the option to accelerate and we have an executed written assumption agreement which has been accepted in writing by the lender. Those two conditions having been met, the lender shall release the borrower from all obligations under this mortgage and note. The lender did not have to draft paragraph 17 in the way that it did. It could have included language that said that even on an assumption agreement, the lender shall release the original borrower from all obligations only for additional consideration, or that the lender shall release the borrower only upon application by the borrower, or that the borrower shall still be bound unless there is a specific release executed by the lender. No language of that kind appears in the mortgage at all. Therefore, I believe that all of the requirements of paragraph 17 have been satisfied and that the Sills should be released by operation of the language of paragraph 17 from any further obligation under the mortgage and note.

Therefore, I respectfully dissent and would reverse the trial court's order entering a deficiency judgment against the Sills.